Document Number Case Number
06-C-0611-C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
06/15/2007 10:13:42 AM CDT

# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SILICON GRAPHICS, INC.,

        Plaintiff,

    v.

ATI TECHNOLOGIES, INC.,

        Defendant.

OPINION and ORDER

06-C-611-C

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this action for patent infringement, plaintiff Silicon Graphics, Inc. contends that products made by defendant ATI Technologies Inc. infringed three of plaintiff's patents relating to advanced graphics processing technology. These patents include United States Patent Nos. 6,650,327 (the '327 patent), 6,292,200 (the '200 patent) and 6,885,376 (the '376 patent). Defendant has asserted three counterclaims, including one in which it contends that the '327 patent is unenforceable as a result of plaintiff's inequitable conduct before the United States Patent and Trademark Office.

Now before the court are a spate of motions. First, defendant has filed a partial motion to dismiss, in which it asserts that plaintiff did not have standing to assert

1

infringement claims against it with respect to the '200 and '327 patents because plaintiff was not the sole owner of the patents.    Three pending motions relate to this motion to dismiss, which I will address in the context of that motion: (1) defendant's motion to submit materials outside the pleadings in support of its motion to dismiss; (2) plaintiff's motion to submit a surreply in opposition to defendant's motion to dismiss; and (3) plaintiff's motion for leave to file supplemental information in response to defendant's motion to dismiss.  In addition, plaintiff has filed a motion requesting leave to file a second amended complaint, adding as defendants ATI Technologies ULC and    Advanced Micro Devices, Inc. and alleging that defendant engaged in indirect infringement of its patents.  Finally, defendant has filed a motion to strike counterclaims included in plaintiff's reply to its answer to plaintiff's first amended complaint.

I find that although plaintiff did not have complete ownership of the '200 and '327 patents at the inception of this case, and therefore lacked standing to sue for patent infringement, the inventors have since assigned to plaintiff full rights, an act that corrects the problem of plaintiff's lack of prudential standing.  Therefore, defendant's motion to dismiss will be denied.

Because defendant's motion to dismiss raised questions of standing and jurisdiction, I have considered materials outside the pleadings in resolving the matter, as I am permitted to do.  Capitol Leasing Co. v. Federal Deposit Insurance Corp., 999 F.2d 188, 191 (7th Cir.

2

1993). Therefore, defendant's motion to submit materials outside the pleadings in support of its motion to dismiss will be granted. Next, plaintiff's request to file a surreply in opposition to defendant's motion to dismiss will be granted, to the extent it is responsive to new information included in defendant's reply brief. Finally, plaintiff's motion for leave to file a supplemental submission with respect to defendant's motion to dismiss will be denied, because it is unnecessary.

Plaintiff's motion to amend its complaint will be granted, because I have found that the amendment is not unduly prejudicial to defendant. Because defendant filed an early motion for summary judgment, I will permit it to file a second motion for summary judgment limited to plaintiff's allegations of indirect infringement, should it choose to do so. Because the second amended complaint is the operative pleading from this point forward, defendant's motion to strike plaintiff's counterclaims contained in plaintiff's reply to defendant's answer to plaintiff's first amended complaint will be denied as moot.

For the purposes of deciding the pending motions only, I draw the following facts from the pleadings and the documents the parties have submitted in connection with their briefing of the motions.

## FACTS

### A. Procedural History

3

_____Plaintiff filed this action on October 23, 2006.  In its original complaint, plaintiff alleged that defendant was infringing the '327 patent.  On  November 30, before defendant had filed an answer to the original complaint, plaintiff filed an amended complaint, in which it alleged that defendant was also infringing the '200 patent and '376 patent in violation of 35 U.S.C. § 271.  Specifically, plaintiff alleged in the first amended complaint that defendant "has infringed and continues to infringe" the '327 and '200 patents "by making, using, selling and offering to sell infringing [products]" "for use" in "desktop, laptop and server/workstation computing" and CrossFire systems, respectively.  Plt.'s Am. Cpt., dkt. #6 at 2-3.  In addition, plaintiff alleged that defendant "has infringed and continues to infringe" the '376 patent "by making, using, selling and offering to sell infringing [products]" "compatible for use" with CrossFire systems.  Id. at 3.  Defendant answered the amended complaint on December 15, 2006, and asserted several counterclaims against plaintiff.

On March 8, 2007, more than four months before the original deadline for filing dispositive motions, defendant filed a motion for summary judgment.  On March 30, 2007, plaintiff filed a "Reply to ATI Technologies ULC's Answer and Counterclaim to Amended Complaint for Patent Infringement and Counterclaim Against ATI Technologies ULC and Advanced Micro Devices, Inc."  Also on March 30, plaintiff filed a motion for leave to file a second amended complaint.  Plaintiff's proposed second amended complaint names as

4

defendants ATI Techologies, Inc., ATI Technologies ULC and Advanced Micro Devices, Inc.

In addition to reiterating the allegations that defendant ATI Technologies, Inc. directly

infringed the '327, '200 and '376 patents, the proposed amended complaint includes the

following allegations regarding all three patents:

> The ATI Defendants have contributed to the direct infringement by third
> parties under 35 U.S.C. § 271(c), including computer manufacturers such as
> Acer, resellers and end-user consumers, by providing their accused products as
> components for use in computer systems.  The [accused products] have no
> substantial non-infringing use, and the ATI Defendants have engaged in the
> foregoing conduct knowing that their accused products have no substantial
> non-infringing use.
>
> The ATI Defendants actively and intentionally induced the infringement
> under 35 U.S.C. § 271(b) of the [] patent claims by encouraging the use of the
> [accused products] by resellers, manufacturers and end-users knowing that
> said use directly infringes the claims of the [] patent.

Plt.'s Sec. Am. Cpt., dkt. #66 ex. 1 at 3-7.

### B.  The '200 Patent

On October 23, 1998, plaintiff filed a patent application with the U.S. Patent and

Trademark Office, Ser. No. 09/177,911, for an "Apparatus and Method for Utilizing

Multiple Rendering Pipes for a Single 3-D Display."  This application led to the '200 patent.

The '200 patent names three inventors, including Gregory Buchner, who was employed by

plaintiff when the technology was created, but had left his position by the time plaintiff filed

5

the patent application. During his employment, Buchner assigned rights to several patents to plaintiff, including U.S. patent numbers 5,471,572, 5,490,240 and 5,438,654, by executing assignment forms. Buchner did not execute an assignment regarding his rights to the '200 patent.

The other two named inventors assigned their interest in the '200 patent to plaintiff by signing forms titled "Assignment to Silicon Graphics, Inc." The forms stated that, for "good and valuable consideration," they agreed to

> . . . hereby sell, assign and transfer unto Silicon Graphics, Inc. . . . the entire right, title and interest . . . in and to any and all improvements, including the right of priority in, to, and under, the application for the United States patent entitled: APPARATUS AND METHOD FOR UTILIZING MULTIPLE RENDERING PIPES FOR A SINGLE 3-D DISPLAY

Plaintiff submitted these signed forms to the U.S. Patent and Trademark Office as proof of the assignments. Plaintiff submitted Buchner's employment agreement to the U.S. Patent and Trademark Office to establish that Buchner had assigned his interest in the patent to plaintiff. Buchner's "Confidential Information and Inventions Agreement" reads, in part,

> Assignment of inventions: I agree to assign to SGI or its designee all rights, title, and interest in and to any inventions . . . which I may solely or jointly conceive or develop or reduce to practice during my employment with SGI.

The U.S. Patent and Trademark Office listed plaintiff as the assignee for the '200 patent on a form titled "Transmittal of an Assignment," which was dated February 18, 1999. When the U.S. Patent and Trademark Office issued the '200 patent on September 18, 2001,

6

it listed plaintiff as the sole assignee.

On March 26, 2007, Buchner signed an "Agreement To Not Assert Ownership and Assignment."  The agreement states in part:

> Without acknowledging any rights in United States Patent No. 6,292,200 filed on October 23, 1998, and entitled APPARATUS AND METHOD FOR UTILIZING MULTIPLE RENDERING PIPES FOR A SINGLE 3-D DISPLAY . . . Signatory represents as follows: Signatory does not assert any ownership or other interest in the Patent.  However, to the extent that Signatory has rights or interests in the Patent (which Signatory denies), Signatory hereby sells, assigns and transfers unto Silicon Graphics Incorporated, Signatory's entire past, present and fixture right, title and interest in the Patent, for good and valuable consideration, the receipt of which is acknowledged.

## C.  The '327 Patent

In June 1998, plaintiff filed patent application Ser. No. 09/098,041 for "A Display System Having Floating Point Rasterization and Floating Point Framebuffering" with the U.S. Patent and Trademark Office.  This application led to the '327 patent.  The '327 patent names seven inventors, including Robert Drebin and John Montrym, who were employed by plaintiff when the technology was created, but had left their positions by the time plaintiff filed the patent application.  During their employment, Drebin and Montrym assigned rights to several patents to plaintiff by executing assignment forms.  Neither Drebin nor Montrym executed an assignment regarding rights to the '327 patent.

The other five named inventors assigned their interest in the '327 patent to plaintiff

7

by signing forms titled "Assignment to Silicon Graphics, Inc." The forms stated that, for

"good and valuable consideration," they agreed to

> . . . hereby sell, assign and transfer unto Silicon Graphics, Inc. . . . the entire
> right, title and interest . . . in and to any and all improvements, including the
> right of priority in, to, and under, the application for the United States patent
> entitled: DISPLAY SYSTEM HAVING FLOATING POINT
> RASTERIZATION AND FLOATING POINT FRAMEBUFFERING

Plaintiff submitted these signed forms to the U.S. Patent and Trademark Office as proof of

the assignments.

To establish that Drebing and Montrym had assigned their interests in the '327

patent to plaintiff, plaintiff submitted their signed employment agreements to the U.S.

Patent and Trademark Office. Drebin's and Montrym's "Confidential Information and

Proprietary Developments Employment Agreement" state, in part:

> C. This Agreement also concerns Inventions, Improvements, data, processes,
> computer programs and discoveries (hereinafter called "Proprietary
> Developments") that are conceived or made by me (alone or with others)
> while I am (or while they are) employed by SGI, and which relate to the
> research and/or development of the business of SGI or which result from tasks
> assigned to me or those others by SGI: and that do not qualify fully under the
> provisions of California Labor Code Section 2870. Such Proprietary
> Developments are the property of SGI, and I agree:
>
> 1. to disclose them in writing promptly to SGI;
>
> 2. to assign them to SGI;
>
> 3. to execute all documents and do all things necessary to assist SGI in
> obtaining patent, copyright and/or trade secret protection in all countries, SGI

to pay the expenses.

The U.S. Patent and Trademark Office listed plaintiff as the assignee for the '327 patent on form titled "Transmittal of an Assignment," which was dated March 8, 1999. When plaintiff's agents contacted Montrym in March 2002 to ask whether he would sign a declaration regarding the application for the '327 patent, Montrym indicated that he would not because lawyers for his current employer advised him that he should not "receive" materials related to the application for the '327 patent. The U.S. Patent and Trademark Office issued the '327 patent on November 18, 2003; plaintiff is listed as the sole assignee.

On March 26, 2007, Drebin signed an "Agreement To Not Assert Ownership and Assignment." The agreement states in part:

> [w]ithout acknowledging any rights in United States Patent No. 6,650,327 filed on June 16, 1998, and entitled DISPLAY SYSTEM HAVING FLOATING POINT RASTERIZATION AND FLOATING POINT FRAMEBUFFERING . . . Signatory represents as follows: Signatory does not assert any ownership or other interest in the Patent. However, to the extent that Signatory has rights or interests in the Patent (which Signatory denies), Signatory hereby sells, assigns and transfers unto Silicon Graphics Incorporated, Signatory's entire past, present and fixture right, title and interest in the Patent, for good and valuable consideration, the receipt of which is acknowledged.

On March 29, 2007, Montrym signed an "Assignment," which states, in part, that "Assignor hereby assigns to [plaintiff] . . . , all of Assignor's right, title and interest in the Invention, all improvements therein, the Application and all priority rights arising therefrom,

9

and any patents, and any reissues and extensions thereof . . . ." The assigned invention is described as "Display System Having Floating Point Rasterization and Floating Point Framebuffering" and is identified as "SERIAL NO: 091098,041 (now U.S. Pat. No. 6,650,327)."

## OPINION

### A. <u>Motion to Dismiss for Lack of Standing</u>

Before discussing the merits of defendant's motion to dismiss, I must consider several related motions. First, defendant has requested leave to submit materials outside the pleadings. Dkt. #40. (Plaintiff simply submitted materials without requesting leave.) When considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), courts are permitted to consider outside materials; doing so does not transform the motion to dismiss into one for summary judgment. <u>See, e.g.</u>, <u>Capitol Leasing Co.</u>, 999 F.2d at 191. Therefore, defendant's motion will be granted and I will consider the materials submitted by the parties.

Next, plaintiff filed requests for the court to consider its surreply, dkt. #71, and a "supplemental submission," dkt. #123, in response to defendant's motion to dismiss. Plaintiff's motion to file a surreply will be granted; its motion for leave to file a supplemental submission will be denied as unnecessary. Ordinarily, this court follows the lead of the

Court of Appeals for the Seventh Circuit, and considers as waived arguments or facts raised for the first time in a reply brief. United States v. Adamson, 441 F.3d 513, 521 n.2 (7th Cir. 2006); Peters v. Astrazeneca, LP, 417 F. Supp. 2d 1051, 1054 (W.D. Wis. 2006); Michaels v. Mr. Heater, Inc., 411 F. Supp. 2d 992, 995-96 (W.D. Wis. 2006). However, in its reply brief, defendant provided the new information that on March 26, 2007, counsel for Drebin and Buchner had sent the parties documents titled "Agreement To Not Assert Ownership and Assignment" signed by Drebin and Buchner and asked that the court "be made aware" of these documents. This was the same day that plaintiff filed its response to defendant's motion to dismiss and plaintiff did not mention these documents in its response. In its surreply, plaintiff states that on March 29, 2007, Montrym executed an "Assignment" of his rights in the '327 patent to plaintiff. In the interest of sound judicial administration, I will grant plaintiff's motion and consider these developments and the parties' arguments about their effect.

Finally, more than a month after briefing on defendant's motion to dismiss was complete, plaintiff "discovered" case law that it would like the court to consider. The case law cited by plaintiff in support of its motion is not new; however, some of the cases are relevant to the evaluating the nature of plaintiff's standing problem and deciding whether the late assignments could resolve this problem. Generally speaking, courts consider all relevant case law when evaluating the merits of a party's case. That is what I have done in

this case.  Therefore, plaintiff's motion for leave to file supplemental submission on standing will be denied as unnecessary.

I turn now to the merits of defendant's motion to dismiss for lack of standing. Defendant's motion to dismiss presents two questions: did plaintiff have standing at the outset of this case to bring suit against defendant for its alleged infringement of the '200 and '327 patents; and if not, has plaintiff corrected this problem by procuring subsequent assignments from the inventors?

Standing to sue is a threshold question, which the party bringing the action bears the burden of establishing.  Sicom Systems v. Agilent Technologies, Inc., 427 F.3d 971, 975-76 (Fed. Cir. 2005).  In a case alleging patent infringement, the patent owner has standing to sue.  Id. at 976.  However, if there are co-owners, each must join in the action.  Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998) (recognizing that, as result of this rule, "one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit").

"It is a bedrock tenet of patent law that 'an invention presumptively belongs to its creator.'"  Israel Bio-Engineering Project v. Amgen, Inc., 475 F.3d 1256, 1263 (Fed. Cir. 2007).  Therefore, the named inventor of a patent is the presumptive owner.  Ethicon, Inc. 135 F.3d at 1460.  Patents have the attributes of personal property and an inventor may transfer her ownership interests by written assignment.  35 U.S.C. § 261.

12

1. Employment agreements

In asserting its right to sue for alleged infringement of the parents in issue, plaintiff alleges that the employment agreements signed by all three men were sufficient to assign their interests in the patents to plaintiff.  Buchner's employment agreement stated: "*I agree to assign to SGI* . . . all rights, title, and interest in and to any inventions . . . which I may solely or jointly conceive or develop or reduce to practice during my employment with SGI." The agreement signed by Drebin and Montrym stated, " . . . Proprietary Developments are the property of SGI, and *I agree . . . to assign them to SGI.*"

The language of the employment agreements provided that the inventors *would* assign their rights and interest in any covered invention.  The agreements themselves do not assign the interests because they require that another action, the assignment, occur in the future. The Court of Appeals for the Federal Circuit has made clear that such "agreements to assign" an ownership interest in a patent are insufficient to establish ownership and standing. Arachnid, Inc. v. Merit Industries, Inc., 939 F.2d 1574, 1576 (Fed. Cir. 1991) (agreement stating that any invention by contractor "shall be property of [the client] and all rights thereto will be assigned [to client]" was "agreement to assign and not an assignment"); compare Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245, 1253 (Fed. Cir. 2000) (employment agreement assigned interests when it stated that all inventions created by employee during

13

employment "shall belong exclusively to [employer] and [employee] hereby conveys, transfers and assigns to [employer] . . . all right, title and interest in and to Inventions").

Plaintiff contends that California labor statutes and case law suggest a different outcome than Federal Circuit case law requires. Questions of contract interpretation are governed generally by state law. Minco Inc. v. Combustion Engineering, 95 F.3d 1109, 1117 (Fed. Cir. 1996). The parties appear to agree that the laws of the state of California govern the employment agreements between plaintiff and Buchner, Drebin and Montrym.

Specifically, plaintiff argues that California Labor Code § 2860 and common law "hired to invent" doctrine dictate that plaintiff owned at inception all rights to the inventions that led to the '200 and '327 patents. Section 2860 provides that "Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer . . . ." In spite of the broad language of the statute, California courts have not used § 2860 in the manner urged by plaintiff. Indeed, if the statute were so broad as to have granted plaintiff all rights to inventions developed by their employees, there would be little need for any employer to create a separate agreement covering patent rights, as plaintiff did here.

The "hired to invent" doctrine recognizes an implied-in-fact contract assigning an employer ownership rights to inventions created by employees who have been hired or directed specifically "to exercise inventive faculties." Teets v. Chromalloy Gas Turbine

14

Corp., 83 F.3d 403, 407 (Fed. Cir. 1996) (citing, among other authorities, United States v. Dubilier Condenser Corp., 289 U.S. 178, 187 (1933)).  California courts appear to use this doctrine sparingly to guide decisions regarding ownership of inventions when no explicit agreements exist.  Aero Bolt & Screw Co. v. Iaia, 5 Cal. Rptr. 53 (Ct. App. 1960); Daniel Orifice Fitting Co. v. Whalen, 18 Cal. Rptr. 659 (Ct. App. 1962).  In this case, plaintiff had express agreements with the inventors that governed their relationship and specified how the rights to inventions would be transferred.  It is unfortunate for plaintiff that it was unable to enforce the agreements before it filed this lawsuit; however, the court will not create implied agreements just because express agreements may have been breached.

Finally, plaintiff's own behavior provides strong evidence that it did not expect that assignment would happen as a matter of course.  All of the other inventors of the '200 and '327 patents assigned their interests in the technology to plaintiff through written, signed instruments that were separate from their employment agreements.  Previously, Buchner, Drebin and Montrym had assigned rights to plaintiff for other technologies that they had helped invent.  Moreover, it is clear that plaintiff attempted to procure an assignment from Montrym for technology covered by the '327 patent in 2002, several years after he had left his employment with plaintiff.  None of plaintiff's acts add any plausibility to its argument that separate written assignments were unnecessary under California law.

I conclude that the employment agreements of Buchner, Drebin and Montrym were

"agreements to assign" their interests to plaintiff, but did not themselves convey the inventors' presumptive ownership rights or legal title to plaintiff.

2. Subsequent assignments

As briefing on this motion ended, plaintiff finally procured assignments from Buchner, Drebin and Montrym, making plaintiff the sole owner of the '200 and '327 patents. The question is what, if any, effect these after-the-fact assignments have on plaintiff's standing to pursue this lawsuit. The general rule is that "standing must be present at the time the suit is brought." Gaia Technologies, Inc. v. Reconversion Technologies, Inc., 93 F.3d 774, 780 (Fed. Cir. 1996) ("As a general matter, parties should possess rights before seeking to have them vindicated in court."). Therefore, the Court of Appeals for the Federal Circuit bars plaintiffs from gaining ownership of patents by assignment after they have filed a lawsuit. See, e.g., Walter Kidde Portable Equipment, Inc. v. Universal Security Instruments, 479 F.3d 1330, 1338 n.6 (Fed. Cir. 2007); Gaia Technologies, Inc., 93 F.3d at 780.

This general rule has both constitutional and prudential underpinnings. First, to establish constitutional standing, a plaintiff must demonstrate that he suffered an injury-in-fact that is "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Teva Pharmaceuticals USA, Inc. v. Novartis

16

Pharmaceuticals Corp., 482 F.3d 1330, 1337 (Fed. Cir. 2007). Absent ownership, it is difficult to imagine that a party could be harmed by infringement of a patent. Constitutional standing must be present at the outset and may not be remedied once a case has begun. Lujan v. Defenders of Wildlife, 504 U.S. 555, 571 n.4 (1992).

In addition, there are sound prudential reasons why after-the-fact assignments are disfavored. First, "allowing subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue." Gaia Technologies Inc., 93 F.3d at 780. Next, it is easy to see how post-filing assignments could be used for purposes of gaining leverage and litigation strategy. In addition, it is reasonable for courts to expect parties initiating costly, time-consuming litigation to "get their ducks in a row" before marching into court.

In this case, however, neither constitutional nor prudential standing limitations require dismissal of plaintiff's claims regarding the '200 or '327 patents. The constitutional requirements are satisfied because plaintiff was undisputedly an owner and "patentee" of the '200 and '327 patents on the day it filed its original complaint. It held signed contracts from the inventors promising to assign full ownership rights, although the assignments were not completed until after the case was filed. The current circumstances are distinct from those in which a plaintiff is attempting to enforce a patent to which it lacks rights because it is a non-exclusive licensee or merely affiliated with the patentee rather than being the actual

17

holder of the patent.  See, e.g., Z Trim Holdings v. Fiberstar, Case No. 06-C-361-C, 2007 U.S. Dist. LEXIS 8569 (W.D. Wis. Feb. 5, 2007).  In this case, plaintiff was an owner of both patents.  If defendant engaged in the alleged infringement, plaintiff was injured and could redress the harm by obtaining judgment in its favor.  This is sufficient to establish constitutional standing.  Therefore, if there is any bar to plaintiff's pursuit of this action, it is prudential in nature.

However frustrating it may be for the court and defendant that plaintiff failed to insure that it was on firm standing ground on the day it filed this lawsuit, it would be a waste of everyone's time to dismiss plaintiff's claims regarding the '200 and '327 patents now that all of the inventors have assigned their ownership interests to plaintiff.  Defendant runs no risk of being the subject of multiple lawsuits by the other co-owners.  Nor is plaintiff attempting to procure rights to which it had no legitimate claim at the outset.  Further, even if I were to grant defendant's motion to dismiss, I would dismiss plaintiff's claims without prejudice and allow plaintiff to refile.  If plaintiff did refile these claims, the result would be two very closely related lawsuits, between the same parties, pending on parallel tracks. This would be an inefficient way to handle the claims for both the parties and the court.

Finally, this common sense approach is consistent with precedent.  The Court of Appeals for the Federal Circuit has made it clear that when an original plaintiff has Article III standing to bring an infringement action, prudential standing concerns "may be overcome

18

by adding a plaintiff with proper standing." Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 1203 n.4 (Fed. Cir. 2005). Moreover, the court of appeals has allowed corrections of prudential standing problems far more serious than this. For example, in Schreiber Foods, Inc., the plaintiff had standing to file a patent infringement action, but during the course of the litigation assigned its rights to an affiliate for tax avoidance purposes. Id. at 1200. By the time judgment was entered, full rights had been reassigned to plaintiff. Id. The court of appeals found that the district court erred when it vacated a judgment for plaintiff on standing grounds. Id. Instead, the court of appeals determined that the brief lack of standing was not fatal to plaintiff's case, and stated that "temporary loss of standing during patent litigation can be cured before judgment." Id. at 1204.

Therefore, because any standing problem plaintiff had at the time it filed this case was prudential in nature and has since been cured, I will deny defendant's motion to dismiss plaintiff's claims regarding the '200 and '327 patents.


## B. Motion to Amend

Next, plaintiff requests leave to file a second amended complaint that includes two major changes. First, plaintiff names as defendants Advanced Micro Devices, Inc. and ATI Technologies ULC, and then adds specific allegations that defendants contributed to infringement of the '200, '327 and '376 patents under 35 U.S.C. § 271(c) and induced

19

infringement of the patents under § 271(b).  The operative complaint, plaintiff's first amended complaint, contains no reference to 35 U.S.C. §§ 271(b) or (c).  Instead, plaintiff states only that defendant "has infringed and continues to infringe" the '327 and '200 "by making, using, selling and offering to sell infringing [products]" "for use" in "desktop, laptop and server/workstation computing" and CrossFire systems, respectively.  In addition, plaintiff alleges that defendant "has infringed and continues to infringe" the '376 patent "by making, using, selling and offering to sell infringing [products]" "compatible for use" with CrossFire systems.

Rule 15(a) of the Federal Rules of Civil Procedure provides that "a party may amend [its] pleading once as a matter of course at any time before a responsive pleading is served" and that otherwise amendment is permissible "only by leave of court."  Whether to grant leave to amend a pleading pursuant to Rule 15(a) is within the discretion of the trial court, Sanders v. Venture Stores, Inc., 56 F.3d 771, 773 (7th Cir. 1995), and "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  Although leave to file an amended or supplemental complaint should be granted liberally, a request to amend may be denied on several grounds, including undue delay, undue prejudice to the party opposing the motion, or futility of the amendment.  Butts v. Aurora Health Care, Inc., 387 F.3d 921, 925 (7th Cir. 2004); Chavez v. Illinois State Police, 251 F.3d 612, 632 (7th Cir. 2001).

I understand that defendant does not challenge plaintiff's proposed addition of

20

Advanced Micro Devices, Inc. and ATI Technologies ULC as named defendants.  Instead, defendant seems to confirm that their addition is consistent with the company's current corporate structure and that they are the real parties in interest to this action.  However, defendant challenges the propriety of plaintiff's allegations that defendant contributed to or induced infringement of any of plaintiff's patents under 35 U.S.C. §§ 271(b) and (c). Defendant asserts that the addition of these theories of indirect infringement to plaintiff's case would be unduly prejudicial and "tantamount to defending an entirely new lawsuit." Plaintiff contends that the specific references to §§ 271(b) and (c) in its second amended complaint are intended merely for "clarification of the scope of its infringement claims" and that it has been pursuing indirect infringement theories all along, an assertion defendant disputes.

Whether plaintiff's prior pleadings alleged indirect infringement with sufficient particularity is beside the point.  At this stage of the litigation, I am willing to allow plaintiff to amend its pleadings to allege indirect infringement with greater specificity, even if defendant could show it would not have known that plaintiff intended to allege indirect infringement.  Doing so will require additional discovery, but defendant has not persuaded me that the prejudice of engaging in run-of-the-mill discovery is so significant that I should ignore the general rule that leave to amend should be "freely given."

Although the court usually limits parties to one motion for summary judgment each

and defendant filed an early motion for summary judgment that is currently before the court, I will allow defendant to file a second motion for summary judgment, limited to plaintiff's allegations of indirect infringement.

### C. Motion to Strike Counterclaims

Finally, defendant has moved to strike counterclaims asserted by plaintiff in its "reply" to defendant's amended answer. Defendant contends first that plaintiff had no right under Rule 7(a) of the Federal Rules of Civil Procedure to file a reply to its answer and raise new claims. Defendant is correct. However, the second amended complaint will be the operative pleading in this case. Defendant will have an opportunity to file a new answer, making its motion to strike moot.

### ORDER

IT IS ORDERED that

1. Defendant ATI Technologies ULC's motion to dismiss plaintiff Silicon Graphics, Inc.'s claims related to the '200 and '327 patent for lack of standing, dkt. #41, is DENIED.

2. Defendant's motion for leave to submit materials outside the pleadings, dkt. #40, is GRANTED.

3. Plaintiff's motion to for leave to file a surreply, dkt. #71, is GRANTED.

22

4.  Plaintiff's motion for leave to file a supplemental submission, dkt. #123, is DENIED as unnecessary.

5.  Plaintiff's motion for leave to file a second amended complaint, dkt. #65, is GRANTED.  Defendant will be granted leave to file a second, supplemental motion for summary judgment regarding plaintiff's allegations of indirect infringement, if it chooses to do so.

6.  Defendant's motion to strike plaintiff's counterclaims, dkt. #91, is DENIED as moot.

Entered this 14th day of June, 2007.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

23