## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

```
----------------------------------------------------------x
SILICON GRAPHICS, INC.,                 :
                                        :
                    Plaintiff,          :        Civ. Action No. 06-C-0611-C
                                        :
         v.                             :
                                        :
ATI TECHNOLOGIES, INC.,                 :
ATI TECHNOLOGIES ULC and                :
ADVANCED MICRO DEVICES, INC.            :
                                        :
                    Defendants.         :
----------------------------------------------------------x
```

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISQUALIFY ROBINS, KAPLAN, MILLER AND CIRESI L.L.P. AS COUNSEL FOR DEFENDANTS

Edward J. Pardon
MERCHANT & GOULD P.C.
10 East Doty Street, Suite 600
Madison, WI  53703-3376
(608) 280-6759 (Telephone)
(612) 332-9081 (Fax)
email:  EPardon@merchantgould.com

James M. Bollinger
Laura E. Krawczyk
TROUTMAN SANDERS LLP
The Chrysler Building
405 Lexington Avenue
New York, NY  10174
(212) 704-6000 (Telephone)
(212) 704-6288 (Fax)
email:
  james.bollinger@troutmansanders.com
  laura.krawczyk@troutmansanders.com

*Attorneys for Plaintiff Graphics Properties
Holdings, Inc.* (formerly *Silicon Graphics, Inc.*)

1414554v2

## <u>TABLE OF CONTENTS</u>

**PAGE**

I.      PRELIMINARY STATEMENT ..................................................................................... 1

II.     FACTUAL BACKGROUND.......................................................................................... 2

        A.      Leichtman's Extensive Representation of SGI ...................................................... 2

        B.      Leichtman's Primary Role in Third-Party Discovery, Damages and
                Inequitable Conduct Defense ................................................................................ 3

        C.      Robins Kaplan's Decision to Open a New York Office and Recruit
                SGI's Former Counsel Leichtman to Manage It .................................................... 4

        D.      AMD Relies on Many Different Patent Litigation Attorneys and Firms............... 5

III.    ARGUMENT .................................................................................................................. 6

        A.      Robins Kaplan's Conflict of Interest Prevents It From Representing
                ATI and AMD in This Action................................................................................ 6

                1.      Legal Standard ........................................................................................... 6

                2.      The Court Has the Authority to Disqualify Counsel - Authority
                        That Needs to be Exercised Here .............................................................. 7

        B.      Leichtman's Conflict of Interest Cannot Be Purged Under Wisconsin Law......... 8

                1.      Leichtman's Representation of SGI Was Near Continuous and
                        Extensive And Unquestionably Involved "Confidences" of SGI .............. 8

                2.      Leichtman's Role Within the IP Litigation Group Precludes
                        Effective "Screening" And As a Partner/Shareholder That Shares
                        in the Firm's Profits ................................................................................. 11

                3.      Leichtman's Attempted Notice Under SCR 20:1.10(a)(2)(iii) Was
                        Defective .................................................................................................. 13

                4.      Alleged Hardship is Unpersuasive as Robins Kaplan Knew of the
                        Conflict .................................................................................................... 13

IV.     CONCLUSION ............................................................................................................ 14

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Cameron Iron Works, Inc. v. Hydril Co.*,
    No. H-79-1170, 1980 U.S. Dist. LEXIS 16489 (S.D. Tex. Jan. 9, 1980).........................10

*Freeman v. Chicago Musical Instrument Co.*,
    689 F.2d 715 (7th Cir. 1982) ............................................................................................7

*Hitachi, Ltd. v. Tatung Co.*,
    419 F. Supp. 2d 1158 (N.D. Cal.  2006) ...................................................................11, 12

*National Union Fire Insurance Co. v. Alticor, Inc.*,
    472 F.3d 436 (6th Cir. 2007) ............................................................................................9

*Nelson v. Green Builders, Inc.*,
    823 F. Supp. 1439 (E.D. Wis. 1993)..................................................................................7

*Sunbeam Products, Inc. v. Hamilton Beach Brands, Inc., et al.*,
    Civil Action No. 3:09cv791, 2010 U.S. Dist. LEXIS 74001 (E.D. Va. July 22,
    2010) ..................................................................................................................2, 10, 11

*Tucker v. George*,
    569 F. Supp. 2d 834 (W.D. Wis. 2008) ............................................................................6

*United States v. Clarkson*,
    567 F.2d 270 (4th Cir. 1977) ............................................................................................8

*United States v. McGee*,
    Case No. 07-CR-177, 2007 U.S. Dist. LEXIS 64839 (E.D. Wis. August 31, 2007)...........8

Plaintiff Graphics Properties Holdings, Inc. ("GPHI")[1], by its attorneys, submits this Memorandum in Support of its Motion to Disqualify Robins, Kaplan, Miller and Ciresi L.L.P. ("Robins Kaplan") as Counsel for Defendants.  For the reasons discussed below, this Court should grant SGI's motion.

## I.    **PRELIMINARY STATEMENT**

SGI seeks disqualification of the Robins Kaplan firm as a conflict of interest bars it from representing ATI Technologies Inc. ("ATI") and Advanced Micro Devices, Inc. ("AMD") in this action.  David Leichtman, a former Morgan, Lewis & Bockius LLP ("Morgan Lewis") partner represented Silicon Graphics, Inc. ("SGI") against ATI and AMD in this same case.  Earlier this year, Leichtman joined Robins Kaplan as a shareholder in its IP litigation practice, creating an irreconcilable conflict for Robins Kaplan with respect to any work adverse to SGI and U.S. Patent No. 6,650,327 ("the '327 patent").  The canons of ethics and Wisconsin law mandate that Robins Kaplan withdraw from representing AMD.  Robins Kaplan has declined to do so, and this Court should order disqualification for each of the following reasons:

- Robins Kaplan's refusal to withdraw is based solely on its contention that Leichtman's work for SGI was "minor" and "isolated."  The record is to the contrary.  During his work on this contentious litigation, Leichtman's involvement was near continuous and extensive.  Leichtman had primary responsibility regarding key parts of the case, including liability, third-party discovery, damages and SGI's inequitable conduct defense.  Leichtman led several associates in responding to discovery, drafting motions, preparing witnesses and other pre-trial matters.

---

[1]    Silicon Graphics, Inc. ("SGI"), original plaintiff in this action, was renamed Graphics Properties Holdings, Inc. ("GPHI") last fall.  For consistency, plaintiff will be identified as SGI throughout this brief.  A motion correcting the caption will be filed shortly.

1414554v2

- Leichtman requested and was granted *pro hac vice* status in this Court for the sole and specific purpose of representing SGI in this matter. His work extended for a majority of the time the case was pending before trial. (*See* Exh. E).

- Robins Kaplan, apparently in need of a New York office, sought out and recruited Leichtman without regard to its impact on SGI. Robins Kaplan is solely responsible for both the conflict created by its recruiting Leichtman to run its New York office and any prejudice to AMD created by its conflict of interest.

Under these circumstances, Robins Kaplan must withdraw, and its failure to do so compels disqualification by this Court:

> [A] party's right to choose counsel "is 'secondary in importance to the Court's duty to maintain the highest ethical standards of professional conduct to insure and preserve trust in the integrity of the bar.'"

*Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc., et al.*, Civil Action No. 3:09cv791, 2010 U.S. Dist. LEXIS 74001, at *8 (E.D. Va. July 22, 2010) (internal citations omitted). SGI has specifically requested that Robins Kaplan withdraw (Exh. N); a request simply ignored.

## II.     FACTUAL BACKGROUND

### A.     Leichtman's Extensive Representation of SGI

David Leichtman, a seasoned patent litigator for many years at Morgan Lewis, was one of three partners retained by SGI to prosecute its infringement claim against AMD.[2] Leichtman's work for SGI began in 2006, soon after the Complaint was filed. Leichtman sought *pro hac vice* status to formally represent SGI in this district, and on December 13, 2006, this Court granted SGI's motion and admitted Leichtman *pro hac vice*. *See* Dkt. #11.

---

[2]     The exhibits referenced throughout this Memorandum are designated by letters and are exhibits to the Declaration of James M. Bollinger. Exhibit A is Leichtman's current Web-based CV.

This Wisconsin Action continued for over a year to trial on February 1, 2008. The SGI litigation team grew to nine lawyers, and Leichtman actively represented SGI throughout the pre-trial period until his resignation from Morgan Lewis in October 2007. Leichtman actively participated in all phases of discovery on behalf of SGI and against AMD/ATI. As one of the three original partners on this case, Leichtman assisted in strategic planning and decision-making. (*See* Exh. B). He frequently managed associates and attended team meetings and conferences. (Exh. C). In addition to the work detailed above, Leichtman participated in discovery in this case. For example, Leichtman represented SGI's patent counsel, David Yee, at a deposition that involved potentially serious privilege concerns – concerns noted by Leichtman in objections he raised at the deposition. (Exh. D).

Leichtman's extensive involvement on this matter is reflected by his six-figure billing. (Exh. E). In the course of his work over this extended period and as a trusted counsel to SGI in this case, Leichtman received detailed privileged information regarding many aspects of the dispute, including critical strategic information and related work product. *See*, Bollinger Declaration, ¶ 3.

**B.**     **Leichtman's Primary Role in Third-Party Discovery, Damages and Inequitable Conduct Defense**

As with any patent infringement dispute, case responsibility was allocated for the AMD dispute, and Leichtman had three key areas to manage on behalf of SGI. On liability, Leichtman was responsible for third-party discovery, including discovery of Nintendo, a potential user of AMD's infringing products. This involved motion practice and negotiations with his future partners at Robins Kaplan. (Exh. F).

Leichtman was also responsible for SGI's damage case. In this role, Leichtman interviewed experts and ultimately helped select and retain SGI's damage expert, The Invotex

3

Group.  Indeed, based on this exposure gained as SGI's counsel, Leichtman has retained SGI's expert, The Invotex Group, in support of Robins Kaplan's ASCAP litigation, thus poisoning SGI's future use of this same expert.  (Exhs. G, H and I).

Leichtman was also responsible for handling SGI's defense of AMD's contention that the '327 patent was unenforceable.  As noted above, Leichtman assisted on several rounds of motion practice and discovery, including depositions.

### C.    Robins Kaplan's Decision to Open a New York Office and Recruit SGI's Former Counsel Leichtman to Manage It

While this case was on appeal before the Federal Circuit and inactive, Robins Kaplan recruited Leichtman seeking to start a New York office.  In January 2010, Leichtman became a partner in the IP Litigation Group of Robins Kaplan and was assigned to head up and grow Robins Kaplan's IP practice in New York.  (*See* Exhibit J).  Leichtman initially requested that SGI waive the potential conflict – a waiver SGI was unwilling to give.

Perhaps realizing that a waiver was unlikely, Leichtman withdrew the request, stating his work for SGI never rose to the level of creating a conflict:

> As is contemplated by this rule, my **minor** previous work for Silicon Graphics in the Matter was **isolated**.  I did not learn confidential information and did not have contact with Silicon Graphics.  (Emphasis added).

(Exh. K).  In response, SGI disagreed and reserved its rights pending a favorable decision on appeal.  (Exh. L).  Robins Kaplan never contacted SGI on this issue.

Importantly, Leichtman has joined Robins Kaplan, not only as a partner, but joined the same patent litigation group at Robins Kaplan representing AMD.  Robins Kaplan has placed Leichtman in charge of its New York Office, an office focused on IP.  As this case demonstrates, it is Robins Kaplan's practice of using attorneys from different offices to work together on patent infringement disputes.  (Dkt. M).

4

\*    \*    \*

On June 4, 2010, the Federal Circuit ruled for SGI on its appeal and remanded its claim against AMD back to this Court for an assessment of infringement and damages. Entry of the mandate from the Federal Circuit remanding this dispute, however, has not issued. On July 6, 2010, AMD filed a petition for rehearing in the Federal Circuit, a procedure that will likely delay the remand for several months. SGI has informed AMD of the conflict and its unwillingness to grant a waiver. (Exh. N). Notwithstanding its clear conflict and lack of waiver, Robins Kaplan appears poised to represent AMD in the second phase of this case. (Exh. O).

### D.    AMD Relies on Many Different Patent Litigation Attorneys and Firms

AMD is a large diversified semi-conductor manufacturer that employs numerous firms other than Robins Kaplan. For example, AMD currently uses at least six different firms to represent it in patent cases pending in various jurisdictions: O'Melveny & Myers, Richards, Layton & Finger, Fenwick & West, K&L Gates, Vinson & Elkins and William Morgan & Amerson.[3] AMD is involved in suits outside the patent area (*e.g.*, antitrust) as well. (*See* Exh. Q). This appears to be the first patent dispute in which AMD has retained Robins Kaplan as its counsel.

---

[3]    These firms were found by searching Pacer's docketing system, designating AMD as a party and searching active patent cases. *See* Exh. P.

1414554v2

### III.   ARGUMENT

    **A.**    **Robins Kaplan's Conflict of Interest Prevents It
From Representing ATI and AMD in This Action**

        **1.**    **Legal Standard**

This Court resolves attorney disqualification motions under the Wisconsin Supreme

Court Rules of Professional Conduct for Attorneys, and the precepts of the Code of Professional

Responsibility (now largely replaced by the Model Rules of Professional Conduct ("Model

Rules")), as guided by precedent. *Tucker v. George*, 569 F. Supp. 2d 834, 837 (W.D. Wis.

2008). As the ethical codes adopted by the Wisconsin Supreme Court are based upon the Model

Rules, the standards applicable to disqualification motions brought under either set of rules are

"essentially identical." *Tucker*, 569 F. Supp. 2d at 837. Wisconsin Supreme Court Rule

("SCR") 20:1.9(a) states:

> A lawyer who has formerly represented a client in a matter shall not thereafter
> represent another person in the same or a substantially related matter in which that
> person's interests are materially adverse to the interests of the former client unless
> the former client gives informed consent, confirmed in a writing signed by the
> client.

In addition, SCR 20:1.10(a) provides:

> While lawyers are associated in a firm, none of them shall knowingly represent a
> client when any one of them practicing alone would be prohibited from doing so
> by SCR 20:1.7 or SCR 20:1.9 unless:
>
> (1) the prohibition is based on a personal interest of the prohibited lawyer and
> does not present a significant risk of materially limiting the representation of the
> client by the remaining lawyers in the firm; or
>
> (2) the prohibition arises under SCR 20:1.9, and
>
> (i) the personally disqualified lawyer performed no more than minor and isolated
> services in the disqualifying representation and did so only at a firm with which
> the lawyer is no longer associated;
>
> (ii) the personally disqualified lawyer is timely screened from any participation in
> the matter and is apportioned no part of the fee therefrom; and

1414554v2

6

(iii) written notice is promptly given to any affected former client to enable the affected client to ascertain compliance with the provisions of this rule.

The Wisconsin Rule departs from the Model Rule regarding the application of screening. Under the Model Rule, screening may be available, but the provision mandates a stringent "Notice" with requisite follow-up. *See* Model Rule 1.10(a)(2)(ii). Under the Wisconsin Rule, disqualification is not imputed under the "limited circumstances" detailed in 20:1.10(a)(2), *i.e.*, the disqualified lawyer's prior work was "minor and isolated." SCR 20:1.10(a)(2). The Wisconsin Rule is therefore stricter than the Model Rule in that screening is limited to circumstances involving prior work that was "minor and isolated." *Id.* In contrast, the Model Rule 20:10(a) provides for no discussion of circumstances where the disqualified lawyer's prior work was "minor and isolated."[4] *See* Model Rule 1.10(a)(2)(i) (Appended herein as Exhibit 1).

Under these provisions, Robins Kaplan is barred from representing ATI and AMD in the current matter.

### 2.    The Court Has the Authority to Disqualify Counsel - Authority That Needs to be Exercised Here

While these rules contemplate that Robins Kaplan should voluntarily withdraw, it has declined to do so. Under these circumstances, this Court has the "duty to safeguard the sacrosanct privacy of the attorney-client relationship" and thus has discretionary authority to disqualify counsel. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982); *Nelson v. Green Builders, Inc.*, 823 F. Supp. 1439, 1444 (E.D. Wis. 1993). Furthermore, "the trial court is not to weigh the circumstances 'with hair splitting nicety', but in the proper exercise of its supervisory power over the members of the bar and with a view of preventing 'the

---

[4]    Wisconsin Committee Comment: "Paragraph (a) differs from the Model Rule in not imputing conflicts of interest in limited circumstances where the personally disqualified lawyer is timely screened from the matter."

1414554v2

appearance of impropriety' it <u>is to resolve all doubt in favor of disqualification</u>." *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977) (internal citations omitted, emphasis added).

In addressing a motion to disqualify a firm, the court first determines whether the individual attorney with the previous representation is disqualified from representing an adversary of the former client pursuant to SCR 20:1.9. *United States v. McGee*, Case No. 07-CR-177, 2007 U.S. Dist. LEXIS 64839, at *6 (E.D. Wis. August 31, 2007). If the individual attorney is prohibited from representing the adversary by SCR 20:1.9, this conflict is imputed to the <u>entire</u> firm in accordance with SCR 20:1.10(a). This Rule of imputed disqualification provides limited exceptions; however, the presumption of imputed disqualification cannot be rebutted here. *See McGee*, 2007 U.S. Dist. LEXIS 64839, at *7-8; SCR 20:1.10(a).

**B.     Leichtman's Conflict of Interest Cannot Be Purged Under Wisconsin Law**

It is undisputed that Leichtman's past representation of SGI in this very same matter bars him from now representing AMD. While Leichtman claims that he did not receive any "confidences" from SGI, the record clearly demonstrates this is incorrect. (*See* discussion at 2B(1), *infra*). Pursuant to SCR 20:1.10(a), this prohibition is imputed to the entire Robins Kaplan firm and, as demonstrated below, none of the limited exceptions to disqualification apply under these circumstances.

**1.     Leichtman's Representation of SGI Was Near Continuous and Extensive And Unquestionably Involved "Confidences" of SGI**

As set forth in detail in this Memorandum, it is clear that Leichtman was actively involved and played an extensive role in this case. His work on all aspects of this case, and, in particular, his work on damages and discovery cannot be characterized as "isolated" and "minor," under SCR 20:1.10(a)(2)(i). He billed over $100,000 in fees and sought (and was

granted) *pro hac vice* admission to represent SGI in this matter. From the beginning, Leichtman was involved in the very first motions filed by SGI. (Exh. R). His work continued during the early phases of discovery, and he was active in selecting SGI's damage expert and working to develop SGI's damage claim. Indeed, Leichtman's experience led him to retain SGI's damage expert for a case now handled by Robins Kaplan. (*See* Exhs. G, H and I).

Leichtman's work also focused on the defense of AMD's inequitable conduct claim, a claim rich with potentially privileged information. In the course of this work, Leichtman defended SGI's patent counsel, David Yee, at deposition and participated in motion practice relating to this claim. (Exh. D). Throughout, Leichtman was an IP litigation partner, core to a team that shared, developed and implemented strategic litigation decisions that cemented an irrefutable bond as SGI's counsel – one that cannot be so easily dismissed as Robins Kaplan now seeks.

While Leichtman claims to have received no "confidential" information (Exh. K), this conclusion fails to recognize that such confidences naturally flow from the extensive litigation work performed by Leichtman on behalf of SGI. Such litigation assignments necessarily implicate "confidences" and led to disqualification in a recent Sixth Circuit case:

> Egan participated in depositions, document production and strategy sessions, and he drafted pleadings, motions, briefs, and reports for this plaintiff. In this very action, Egan drafted plaintiff's complaint for declaratory judgment and the *Rule* 26 initial disclosures.

*Nat'l Union Fire Ins. Co. v. Alticor, Inc.,* 472 F.3d 436, 437 (6th Cir. 2007) (as the court recognized, client confidence arise in many contexts – including litigation). Furthermore:

> If an attorney is permitted to defend a motion to disqualify by showing that he received no confidential information from his former client, the client, a layman who has reposed confidence and trust in his attorney, will feel that the attorney has escaped on a technicality. If courts protect only a client's disclosures to his attorney, and fail to safeguard the attorney-client relationship itself -- a

1414554v2

relationship which must be one of trust and reliance -- they can only undermine the public's confidence in the legal system as a means for adjudicating disputes.

*Cameron Iron Works, Inc. v. Hydril Co.*, No. H-79-1170, 1980 U.S. Dist LEXIS 16489, at * 11

(S.D. Tex. Jan. 9, 1980) (internal citations omitted).

Leichtman also claims "not to remember" any confidential information.  But this

statement is irrelevant as noted in a recent Eastern District of Virginia patent dispute:

> Sunbeam also argues that Chen does not recollect any material information about the Homeland patents, although it does acknowledge his work relating to the Magic Bullet.  Sunbeam asserts that, as a third-year associate at the time, Chen was not involved in developing litigation strategy.  However, these arguments do not undermine the substantial relatedness of the subject matter of the past representation to the present action.

*Sunbeam Prods., Inc.*, 2010 U.S. Dist. LEXIS 74001, at *15.  The court dismissed a similar

argument in *Cameron*:

> And even though Matthews deposes that he has no recollection of the shear ram patentability and infringement study, the inferences which flow from Matthews' association with Hydril are so strong that it would be unreasonable to conclude that he did not have some knowledge of the subject matter of the pending litigation.

*Cameron Iron Works, Inc.*, 1980 U.S. Dist LEXIS 16489, at * 12.

The *Sunbeam* court further explained that direct client contact is not an element of

disqualification as Leichtman seemed to argue:

> Even if, as is asserted, Chen did not have considerable contact with Homeland clients while at Cislo & Thomas, that does not mean he did not receive client confidences from the partners who did speak directly to clients.  Thus, the "irrebuttable presumption" arises that confidential information was exchanged when, as here, a prior attorney-client relationship existed.

*Id.* (internal citations omitted).  The *Sunbeam* decision is instructive here – and the same

conclusion is unavoidable, particularly in view of Leichtman's role – not as a third-year

associate – but as a lead litigation partner:

10

1414554v2

Here, the appearance of impropriety that Rules 1.9(a) and 1.10(a) target is obvious.  Based on the extensive, wide-ranging activities that Chen himself documented on his time sheets, Chen was in position to have significant inside information on a range of patent issues surrounding the allegedly infringing Magic Bullet product and its patentability.  There is no doubt that Chen 'could have obtained confidential information in the first representation,' on behalf of Homeland, 'that would [be] relevant in the second,' Steptoe & Johnson's representation of Sunbeam.

*Id.* at *15-16 (internal citations omitted).

> ## 2. Leichtman's Role Within the IP Litigation Group Precludes Effective "Screening" And As a Partner/Shareholder That Shares in the Firm's Profits

The Wisconsin Supreme Court Rules regarding disqualification consider screening only if the elements of SCR 20:1.10(a)(2) are satisfied.  In view of the extensive legal work performed for SGI by Leichtman on this precise matter, and that his work was vastly greater than "minor" and "isolated," under the statute, Robins Kaplan cannot overcome the presumption of imputed disqualification.  Coupled to the contentious nature of this dispute and Leichtman's unwillingness to recognize the importance of his role as SGI's counsel, as reflected by his refusal to even acknowledge his receipt of client "confidences" in this matter, screening is clearly foreclosed.  *See, in particular, Hitachi, Ltd. v. Tatung Co.,* 419 F. Supp. 2d 1158 (N.D. Cal. 2006) where the court rejected screening in disqualifying the Greenberg Traurig law firm in a patent litigation, stating:

> Nonetheless, the Court finds that disqualification is warranted, in part because this action and the action in which Mr. Hong represented Hitachi are so substantially related-indeed, they are nearly identical…. Further, Tatung has not cited a single case in which a court held that an ethical wall prevented the vicarious disqualification of a firm where the two matters were as closely related as the two at issue here, and where the disqualified attorney had billed such a significant amount of time on the earlier matter.

*Id.* at 1164.

A further problem arises by the very nature of Robins Kaplan's firm structure. While not small, the use of practice groups concentrating on distinct areas of law reduces the effective size and brings counsel within the same group into much closer and intimate contact. A subpractice, such as patent litigation, shared by Leichtman and the AMD litigation team at Robins Kaplan invariably connects partners through common activities such as other cases, partners meetings, planning conferences and the like that occur at frequent intervals to share ideas and plans. No screening exists to negate this clear risk of disclosure. *See Id.* at 1165.

Indeed, contact between Leichtman and the team of AMD lawyers at Robins Kaplan is highly probable. Leichtman is a patent litigator, not a corporate or tax lawyer, just like the team of Robins Kaplan lawyers working on the SGI matter. Less than a third of Robins Kaplan attorneys list IP as a practice area – and the actual number of attorneys in the IP group is likely much smaller. Participating in exactly the same practice area as the large team working on SGI at Robins Kaplan renders nominal screening procedures proposed by Leichtman nearly impossible to police and interaction between counsel a near certainty.

Simply stated, due to the size and demographics of the firm, the IP Litigation Group and its new New York office in particular, "screening" Leichtman from other IP partners and associates – many of them involved in the SGI litigation – will surely fail, leaving SGI's confidences and strategy dangerously exposed.[5]

Any claim that Leichtman will not share in profits from the AMD representation is also insufficient in this case. While Leichtman fails to provide any details, profits from the SGI litigation for Robins Kaplan will extend not only to the extensive fees from its representation of

---

[5]    As part of its integrated IP practice, it is likely that IP lawyers from Robins Kaplan's other offices will be deeply involved in bringing its embryonic New York office up to speed. Indeed, it is highly likely that current cases out of New York involve IP counsel for Robins Kaplan from other offices.

1414554v2

AMD in this dispute, but for all future work from AMD and any related matters that come to

Robins Kaplan based on its work for AMD.  Because this is the first patent litigation for AMD

by Robins Kaplan and AMD is one of the world's largest electronics companies, Robins Kaplan

likely expects to be AMD's counsel in many future disputes.  The profits from this

representation, while large, will likely be dwarfed by this future work for AMD by Robins

Kaplan.  It is, of course, the incentives in these profits – naturally flowing from the otherwise

tainted representation – that the rules regarding disqualification are designed to negate.

Thus, SCR 20:1.10(a)(2)(ii) has not been satisfied.

### 3.    Leichtman's Attempted Notice Under SCR 20:1.10(a)(2)(iii) Was Defective

Leichtman's alleged "notice" to his former client, SGI (Exh. K), was defective as it failed

to explain the precise steps undertaken to satisfy SCR 20:1.10(a)(2) or any of the bases for his

contention that his work for SGI was "minor" and "isolated."  The alleged "notice" makes no

provisions regarding "profits" from the SGI dispute, and provides a clearly inaccurate portrayal

of his work on behalf of SGI.  Leichtman misdescribes his SGI representation as his "minor

previous work for Silicon Graphics" that did not involve any "confidential information … ."

(*See* Exh. K).  Not only is the "notice" defective, but these statements further contribute to SGI's

anxiety created by Leichtman's new role with AMD's counsel.

### 4.    Alleged Hardship is Unpersuasive as Robins Kaplan Knew of the Conflict

Robins Kaplan will not dispute that it knew of Leichtman's past representation of SGI in

this action before it hired him.  The firm, however, took a gamble that the issue would never

accrue, betting it would prevail on appeal.  AMD's counsel accepted this risk and Leichtman in

spite of the conflict he brought with him.  Robins Kaplan is hard pressed to claim prejudice or

hardship as it voluntarily created the conflict and decided to proceed in spite of it. AMD has

multiple patent counsel to draw on for replacement. With this case on remand, its posture will

permit adequate time for replacement counsel to get up to speed, minimizing any prejudice to

AMD.

IV.    **CONCLUSION**

For the foregoing reasons, SGI requests that its Motion to Disqualify Robins Kaplan,

Miller and Ciresi L.L.P as Counsel for Defendants be granted.

Dated: July 29, 2010                    Respectfully submitted,


                                         /s/ James M. Bollinger
                                        Edward J. Pardon
                                        MERCHANT & GOULD P.C.
                                        10 East Doty Street, Suite 600
                                        Madison, WI 53703-3376
                                        (608) 280-6759 (Telephone)
                                        (612) 332-9081 (Fax)
                                        email: EPardon@merchantgould.com

                                        James M. Bollinger
                                        Laura E. Krawczyk
                                        TROUTMAN SANDERS LLP
                                        The Chrysler Building
                                        405 Lexington Avenue
                                        New York, NY 10174
                                        (212) 704-6000 (Telephone)
                                        (212) 704-6288 (Fax)
                                        email:
                                          james.bollinger@troutmansanders.com
                                          laura.krawczyk@troutmansanders.com

                                        *Attorneys for Plaintiff Graphics Properties*
                                        *Holdings, Inc.* (formerly *Silicon Graphics, Inc.*)

1414554v2

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 29, 2010, copies of **Plaintiff's Memorandum in Support of its**

**Motion to Disqualify Robins, Kaplan, Miller and Ciresi L.L.P as Counsel for Defendants**

were served on counsel for Defendant ATI as follows via ecf and e-mail:

> James D. Peterson
> Bryan J. Cahill
> GODFREY & KAHN, S.C.
> On East Main Street, Suite 500
> Post Office Box 2719
> Madison, WI   53701-2719
> Email:  jpeterson@gklaw.com
>              bcahill@gklaw.com
>
>
> William H. Manning
> Cole M. Fauver
> William A. Webb
> Brian A. Mayer
> ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
> 800 LaSalle Avenue, Suite 2800
> Minneapolis, MN   55402-2015
> Email:  whmanning@rkmc.com
>              cmfauver@rkmc.com
>              bamayer@rkmc.com
>              wawebb@rkmc.com

                                    /s/ James M. Bollinger

1414554v2