# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

SILICON GRAPHICS, INC.,

                 Plaintiff,

     v.

ATI TECHNOLOGIES, INC.,
ATI TECHNOLOGIES ULC, and
ADVANCED MICRO DEVICES, INC.

              Defendants.

CASE NO. 06-CV-611-BBC

---

## DEFENDANTS' RESPONSIVE BRIEF REGARDING THRESHOLD ISSUES

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 1

I.   This Court Cannot Revisit Its Judgment of Noninfringement as to Claims
     17-18 and 21-23 of the '327 Patent. ........................................................... 1

     A.   The Mandate Rule Does Not Authorize the District Court to Deviate
          from the Express Language of the Appellate Decision. ......................... 2

     B.   The Federal Circuit Explicitly Limited Its Vacatur To Claims 2-6
          and Affirmed the Noninfringement Judgment for All Other Claims. ........... 4

     C.   The Federal Circuit Did Not Vacate this Court's Entire Judgment
          with Respect to the Microsoft License. ............................................ 5

     D.   The Federal Circuit's Discussion of Claims 2-6 Cannot Be Extended
          to Claims 17-18 and 21-23. .......................................................... 7

     E.   GPHI Limited Its Appellate Briefing on the Microsoft License Issue
          to Claims 1-6, Thereby Waiving Its Arguments for Claims 17-18 and
          21-23. ................................................................................. 8

     F.   Whereas This Court, Before the Appeal, Had Discretion to Exercise
          Jurisdiction Over AMD's Invalidity Counterclaims, It Has No
          Discretion to Hear GPHI's Infringement Claims for '327 Claims
          17-18 and 21-23 Under the Appellate Mandate. ................................. 10

II.  AMD's Invalidity Affirmative Defense Is Not Precluded by the Federal
     Circuit's Mandate or by this Court's Finding of Waiver. ...................... 11

     A.   Law of the Case Does Not Preclude AMD's Invalidity Affirmative
          Defense. ............................................................................... 12

          1.   The Federal Circuit Did Not Decide that AMD May Not
               Pursue Its Invalidity Affirmative Defense on Remand. .................. 13

       2.    The Finding of Waiver of AMD's Invalidity Counterclaims Does Not Preclude AMD's Invalidity Affirmative Defense............ 15

   B.    The Court Should Not Dismiss AMD's Affirmative Defense Based on Judicial Economy. ................................................................................... 17

III.   GPHI's Attempted Expert Substitution Is Not "Substantially Justified" and Is Not "Harmless" Because It Allows for All New and Different Opinions. ........ 18

IV.   It Would Be Unfair to Allow GPHI to Accuse AMD's R7xx Products in This Case. .......................................................................................................... 21

V.   This Court Dismissed Claim 7 from the Case; There Is No Justification to Reevaluate that Decision Now. .............................................................................. 24

CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arizona v. California,*
  460 U.S. 605 (1983) .................................................................................................... 13

*BMC Res., Inc. v. Paymentech, L.P.,*
  498 F.3d 1373 (Fed. Cir. 2007) ................................................................................... 6

*Dethmers Mfg. Co., Inc. v. Automatic Equip. Mfg. Co.,*
  299 F. Supp. 2d 903 (N.D. Iowa 2004) ...................................................................... 16

*Engel Indus., Inc. v. Lockformer Co.,*
  166 F.3d 1379 (Fed. Cir. 1999) .............................................................2, 9, 10, 11, 14

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.,*
  137 F.3d 1475 (Fed. Cir. 1998) .................................................................3, 4, 7, 14, 15

*Fort James Corp. v. Solo Cup Co.,*
  412 F.3d 1340 (Fed. Cir. 2004) ................................................................................. 10

*In re Princo Corp.,*
  478 F.3d 1345 (Fed. Cir. 2007) ................................................................................... 3

*Intergraph Corp. v. Intel Corp.,*
  253 F.3d 695 (Fed. Cir. 2001) ................................................................................... 16

*Johns Hopkins Univ. v. CellPro, Inc.,*
  152 F.3d 1342 (Fed. Cir. 1998) ................................................................................. 17

*Jones v. Young,*
  No. 3:04CV00257 JLH,
  2007 U.S. Dist. LEXIS 67554 (E.D. Ark. Sept. 10, 2007) ...............................21, 22, 25

*Laitram Corp. v. NEC Corp.,*
  115 F.3d 947 (Fed. Cir. 1997) ...................................................................... 3, 7, 13, 14

*Marchon Eyewear, Inc. v. Rothandberg, Inc.,*
  98 CV 1932, 1999 U.S. Dist. LEXIS 22993 (E.D.N.Y. Mar. 28, 1999) ...................... 13

- iii -

*Monsanto Co. v. Bayer Bioscience N.V.*,
   No. 2007-1299, 275 Fed. Appx. 992 (Fed. Cir. Apr. 23, 2008) .................................... 16

*Morel v. Daimler-Chrysler Corp.*,
   259 F.R.D. 17 (D.P.R. 2009) ........................................................................... 18, 19, 20

*Nystrom v. TREX Co., Inc.*,
   339 F.3d 1347 (Fed. Cir. 2003) .................................................................................. 10

*Robinson v. City of Harvey*,
   617 F.3d 915 (7th Cir. 2010) ...................................................................................... 13

*Roche Palo Alto LLC v. Apotex, Inc.*,
   526 F. Supp. 2d 985 (N.D. Cal. 2007) ........................................................................ 13

*Scaife v. Racine County*,
   238 F.3d 906 (7th Cir. 2001) ...................................................................................... 15

*Tenneco Inc. v. Saxony Bar & Tube, Inc.*,
   776 F.2d 1375 (7th Cir. 1985) .................................................................................... 13

*United States v. Hatter*,
   532 U.S. 557 (2001) .................................................................................................... 15

## Rules

Fed. R. Civ. P. 1 ............................................................................................................... 22

Fed. R. Civ. P. 56 ......................................................................................................... 1, 21

## INTRODUCTION

The Federal Circuit remanded this case for a limited consideration of '327 claims 2-6. Its remand precludes GPHI's assertion of '327 claims 7, 17-18, and 21-23, which this Court previously dismissed, but does not preclude AMD's affirmative defense of invalidity, which this Court did not (and could not) dismiss. This Court has imposed procedural restrictions—specifically, that AMD may not request judgment under Rule 56—on this limited remand. Restrictions on the scope of this remand should go hand-in-hand with the Court's restrictions on summary judgment: GPHI should not be allowed to accuse new products, AMD's R7xx series, while AMD is deprived of the procedures provided for by the Federal Rules of Civil Procedure. To allow GPHI to go straight to trial on AMD's R7xx products, which were not previously accused and evaluated, would cause significant prejudice to AMD.

## ARGUMENT

### I.   This Court Cannot Revisit Its Judgment of Noninfringement as to Claims 17-18 and 21-23 of the '327 Patent.

GPHI's brief does not state the proper legal standards for determining what has been decided by the Federal Circuit's mandate, much less apply them. Instead, where GPHI cites law at all, it misstates the controlling standards in order to reach its improper result, and further attempts to bolster its argument with irrelevant statements about fairness. The only issue is the purely legal determination of the scope of the appellate court's mandate. There is a reason for GPHI's failure to cite a single case in the first nine (of a total of eleven) pages of its brief on this issue, and its failure to apply any law to the facts of this case: its analysis is wrong under controlling Federal Circuit precedent. It should not be adopted.

This Court cannot reconsider its judgment of noninfringement for '327 claims 17-18 and 21-23, because the express language of the Federal Circuit decision precludes it. GPHI's argument is based on three fundamental errors. First, GPHI misconstrues the

mandate rule.  Second, GPHI wrongly states that the Federal Circuit opinion either expressly vacated or was silent on claims 17-18 and 21-23, when it actually expressly affirmed.  Third, GPHI disregards its own appellate briefing on the Microsoft license, which failed to address those claims.

### A. The Mandate Rule Does Not Authorize the District Court to Deviate from the Express Language of the Appellate Decision.

The mandate rule controls the scope of the Court's power on remand: "[u]nless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further consideration." *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999).  This standard is glaringly absent from GPHI's brief.

Applying the mandate rule requires essentially two steps.  Step one is to determine what issues were within the scope of the issues presented on appeal.  *Engel*, 166 F.3d at 1382.  This is determined exclusively by reference to the judgment appealed from.  *Id.* The policy underlying this principle is that a party appealing a judgment must raise every argument it has for attacking that judgment at the first opportunity on appeal.  *Id.* at 1383.  Thus, when a judgment of the district court is appealed, every aspect of that judgment is within the scope of the issues appealed, regardless of what the parties say in their briefs to the Federal Circuit.

Step two is to determine what aspects of the judgment under appeal were "explicitly reserved or remanded" by the appellate court.  *Id.* Anything that is within the scope of the judgment, but *not* explicitly remanded cannot be reconsidered by the district court on remand.  *Id.* Silence by the Federal Circuit on an issue does not mean that that issue is fair game on remand.  If the issue is within the scope of the judgment appealed from, the silence of the appellate court means that issue has been decided and cannot be disturbed.

The cases cited by GPHI at the end of its argument support AMD's application of the mandate rule.  In *Laitram*, *Exxon Chemical Patents*, and *Princo*, the issue that remained available on remand was not within the scope of the judgment appealed. *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 951-53 (Fed. Cir. 1997) (explaining that claim identicality was not within the prior judgment appealed, which "was limited to infringement"); *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1478 (Fed. Cir. 1998) (explaining that infringement by equivalents was not within the prior judgment appealed, which was limited to literal infringement); *In re Princo Corp.*, 478 F.3d 1345, 1349-50 (Fed. Cir. 2007) (explaining that issue of stay was not within the prior judgment appealed, which related to patent misuse).

These cases therefore do not support GPHI's overbroad argument that "[i]t is simply improper to apply a strict limitation on issues on remand based on silence." GPHI's Threshold Brief at 12 (Dkt. #697).  It is improper to apply a limitation on issues on remand based on silence *only* as to issues not within the scope of the judgment appealed.  The rule is the opposite—that silence by the appellate court precludes further consideration—for issues within the scope of the judgment appealed.

In this case, there is no dispute that this Court entered judgment of noninfringement as to '327 claims 17-18 and 21-23.  GPHI's Threshold Brief at 2, 4 (Dkt. #697).  That judgment, therefore, was before the Federal Circuit.  If, as GPHI suggests, the Federal Circuit was silent as to this Court's judgment on claims 17-18 and 21-23, then that is the end of the matter: judgment of noninfringement on those claims cannot be disturbed.[1]  Accordingly, on remand, only claims 2-6 are at issue.

---

[1] As discussed below, AMD disagrees that the Federal Circuit remained silent on those claims.  Instead, it expressly affirmed this Court's judgment of noninfringement.

- 3 -

**B.    The Federal Circuit Explicitly Limited Its Vacatur To Claims 2-6 and Affirmed the Noninfringement Judgment for All Other Claims.**

GPHI contends, essentially, that the Federal Circuit intended to vacate this Court's summary judgment as to all the asserted claims of the '327 patent, but that it inadvertently vacated only claims 2-6.  GPHI's argument does not stand up in light of the explicit language of the Federal Circuit opinion.  The opinion itself is, of course, part of the mandate.  *Exxon*, 137 F.3d at 1483.

The Federal Circuit opinion is meticulous with regard to the claims it was reviewing.  In the background section, the court described claims 1-6, 9-12, and 15-16 and, in a statement critical for understanding the scope of its mandate, indicated that "[t]he remaining claims that Silicon Graphics asserted *will be discussed* in more detail as they become relevant."  Dkt. #683-1 at 6-7 (emphasis added).  Then, the Federal Circuit analyzed the Microsoft license only with respect to claims 2-6:

> [T]his court *only* evaluates the Microsoft License with respect to claims 2 through 6 of the '327 patent, all of which are apparatus claims.

*Id*. at 18 (emphasis added).  Its instructions for the remand were equally clear:

> [T]his court vacates the district court's non-infringement ruling with respect to claims 2-6.

*Id.* at 34.  It explicitly affirmed all other aspects of the Court's judgment:

> In all other respects, for the foregoing reasons, the district court's judgment is affirmed.

*Id.*  The explicit language of the opinion contradicts GPHI's argument that the Federal Circuit inadvertently did not vacate the judgment of noninfringement for claims 17-18 and 21-23.  The opinion makes clear that the Federal Circuit did not consider claims 17-18 and 21-23 to be relevant to its analysis of the Microsoft license judgment, and instead it explicitly affirmed the judgment of noninfringement for those claims.

- 4 -

**C.     The Federal Circuit Did Not Vacate this Court's Entire Judgment with Respect to the Microsoft License.**

GPHI argues that the Federal Circuit vacated this Court's entire judgment with respect to the Microsoft license, but the relevant portions of the Federal Circuit's opinion demonstrate that its judgment on the Microsoft license applies only to claims 2-6: "this court only evaluates the Microsoft License with respect to claims 2 through 6 of the '327 patent, all of which are apparatus claims."  Dkt. #683-1 at 18; *see also* 34 ("[T]his court vacates the district court's non-infringement ruling with respect to claims 2-6 . . . .").  The Federal Circuit's use of the word "only" governs the scope of its remand.  Other, more general statements in the Federal Circuit's opinion cannot supersede this specific statement which controls the remaining proceedings.

For example, GPHI relies on the Federal Circuit's statement "[b]ecause infringement of the claims at issue does not turn on activation, this court vacates the summary judgment ruling of non-infringement based on the Microsoft License and remands for the district court to determine whether any genuine issues of material fact would allow ATI to continue to rely on the Microsoft License at trial."  Dkt. #683-1 at 20; GPHI's Threshold Brief at 8 (Dkt. #697).  But this statement's mention of "the claims at issue" refers to the opening sentence of the paragraph, *which raises only claims 2-6*.  Dkt. #683-1 at 20.  The Federal Circuit's statement, therefore, is consistent with its explicit limitation of its analysis to '327 claims 2-6.  GPHI's suggestion that this statement from the Federal Circuit "confirms the breadth of its ruling" is inaccurate and incorrect.  GPHI's Threshold Brief at 8 (Dkt. #697).

GPHI also relies on the Federal Circuit's statement "[t]his court also determines that the district court erred with respect to the effect of the Microsoft license on direct infringement."  Dkt. #683-1 at 2-3; GPHI's Threshold Brief at 6-7 (Dkt. #697).  This general statement comes from the Federal Circuit's summary of its conclusions and does

not contradict or expand the more specific identification of claims 2-6 in the portion of the opinion discussing the Microsoft license.[2]

The Federal Circuit vacated a portion of this Court's analysis of the Microsoft license not because the Court had misconstrued the license, but because the Court "relied on an erroneous assumption of what constitutes infringement of an apparatus claim." Dkt. #683-1 at 18. Claims 17-18 and 21-23 include both method claims and apparatus claims. In order to address this set of claims, the Federal Circuit would have had to express and evaluate the standard for direct infringement of method claims 17, 18, and 21.[3] It did not. It also would have had to evaluate the specific functional limitations recited in apparatus claims 22 and 23 ("wherein the floating point color values are written to, read from, and stored in the frame buffer"). '327 at 15:18-27 (Beasley Decl. Ex. 1) (Dkt. #701-1). Again, it did not. Without this necessary analysis, the Federal Circuit cannot have vacated this Court's judgment of noninfringement for claims 17-18 and 21-23. The general statements in other parts of the Federal Circuit's opinion cannot be read inconsistently with the controlling, more-specific statements limiting the appellate court's analysis and remand to claims 2-6.

---

[2] The same summary paragraph also states "[b]ecause the district court erroneously construed two of the three contested limitations in the '327 patent this court vacates the summary judgment on claims with those terms." Dkt. #683-1 at 2. This similarly general statement does not vacate this Court's judgment for *all* claims (1-6) that recite "a rasterization process which operates on a floating point format," for example: claim 1 also recites "scan conversion," and the Federal Circuit affirmed this Court's judgment of noninfringement under that term, so the Federal Circuit ultimately vacated this Court's judgment of noninfringement only for claims 2-6. As this general statement does not override the explicit judgment of noninfringement for claim 1, the general statement about the Microsoft license does not expand the explicit analysis and remand for only claims 2-6.

[3] Infringement of a method claim requires performance of each recited method step. *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378-79 (Fed. Cir. 2007).

**D.    The Federal Circuit's Discussion of Claims 2-6 Cannot Be Extended to Claims 17-18 and 21-23.**

GPHI also argues that this Court should ignore the explicit language of the Federal Circuit and instead look to the "spirit" of the decision.  GPHI's Threshold Brief at 12 (Dkt. #697).  The spirit is expressed, according to GPHI, in the rationale for the Federal Circuit's decision concerning the Microsoft license for claims 2-6.  But that argument does not bear scrutiny.

The rationale of the Federal Circuit's analysis of claims 2-6 cannot be extended to other '327 claims.  GPHI cites no authority whatever for limiting the foreclosing effect of a mandate expressly limited to remanding particular issues (those involving claims 2-6) and affirming as to all else that was part of the appealed judgment (here, the judgment of noninfringement of claims 17-18 and 21-23).  Although GPHI cites *Exxon* and *Laitram*, both are plainly inapposite: both involved issues that the district court *had not decided* before the initial appeal at all and so were *not* part of the appellate mandate.  *Exxon*, 137 F.3d at 1478; *Laitram*, 115 F.3d at 951-52.  Here, in contrast, noninfringement of claims 17-18 and 21-23 was indisputably part of this Court's judgment that led to the appeal in this case.  Not being vacated and included in the remand, the determination of noninfringement of those claims is within the scope of the mandate and therefore conclusively determined.

GPHI cites no authority because there is no precedent for allowing *more* to be decided on remand than the mandate says by "logically" extending the Federal Circuit's reasons for remanding claims 2-6 to expand the remand so that it also includes other claims that were plainly omitted from the remand and, instead, included in the affirmance. The case law demonstrates that the opposite is true: a mandate may foreclose *more* issues than those explicitly discussed, not fewer, if those issues are decided by "necessary implication."  *Laitram*, 115 F.3d at 951-52 (explaining that a mandate may foreclose issues not explicitly discussed if those issues are "antecedent to" the issues expressly

decided, and therefore decided "by necessary implication").  Here, analysis of infringement of claims 17-18 and 21-23 is not "antecedent to" the analysis of infringement of claims 2-6.  That is, whether claims 2-6 are infringed does not depend on whether claims 17-18 and 21-23 are infringed.  No decision on claims 17-18 and 21-23 was necessary for the Federal Circuit to vacate this Court's application of the Microsoft license to claims 2-6.  For example, the Federal Circuit may have affirmed the judgment on claims 17-18 and 21-23, despite its ruling on claims 2-6, because it found them waived, as discussed in AMD's opening threshold brief at 5-6 and in the following section.[4]

In any event, where, as here, the Federal Circuit's remand is expressly confined to specific claims (2-6), there is no precedent for expanding the remand to include other claims that the appellate court recognized were part of this Court's judgment but omitted from the remand, instead declaring that the "in all other respects . . . the district court's judgment is affirmed."  Dkt. #683-1 at 34.  The mandate rule precludes reconsideration of GPHI's infringement case for '327 claims 17-18 and 21-23.

### E.  GPHI Limited Its Appellate Briefing on the Microsoft License Issue to Claims 1-6, Thereby Waiving Its Arguments for Claims 17-18 and 21-23.

It is unnecessary to second-guess the Federal Circuit's decision to vacate this Court's judgment of noninfringement only for claims 2-6.  There might have been many reasons why the Federal Circuit chose to let the judgment stand as to claims 17-18 and 21-23.  But waiver provides a compelling justification.

---

[4] GPHI recognizes that the Federal Circuit's opinion does not compel the conclusion that it remanded claims 17-18 and 21-23; for example, GPHI allows for the possibility "that the Federal Circuit overlooked claims 17-18 and 21-23."  Dkt. #697 at 10 n.4.  Likewise, the Federal Circuit may have found waiver.

GPHI limited its briefing of the Microsoft license issue to claims 1-6.[5]  GPHI points out that its notice of appeal included the Court's summary judgment decisions as to all the claims of the '327 patent.  GPHI's Threshold Brief at 5 (Dkt. #697).  But GPHI's opening appellate brief did not present any argument for vacating that judgment as to claims 17-18 and 21-23.  GPHI's appellate brief indicated that the Microsoft license is addressed at pages 41-48, but there is no mention of claims 17-18 and 21-23 in those pages.  Beasley Decl. Ex. 2 at 41-48 (Dkt. #701-2).  GPHI was obligated in its opening appeal brief to raise every basis it had for attacking the Court's summary judgment as to the asserted claims.  "An issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief is necessarily waived."  *Engel Indus.*, 166 F.3d at 1383.

The remainder of GPHI's opening appellate brief also does not identify which '327 claims GPHI sought to appeal with respect to the Microsoft license judgment. The brief's general statements about the Microsoft license identify no '327 claims and therefore did not present any claims to the Federal Circuit for evaluation.  Beasley Decl. Ex. 2 at 2, 18 (Dkt. #701-2).  In fact, the portion of GPHI's appellate brief relating to its own appeal never mentions claims 17, 22, or their dependents.  The brief mentions those claims only in GPHI's response to AMD's appeal (which involved the validity of claims 17, 18, 22, and 23).

Waiver by failure to appeal is automatic, *Engel Indus.*, 166 F.3d at 1383, and GPHI is incorrect that AMD had any burden to raise it with the Federal Circuit.  *See* GPHI's Threshold Brief at 6 (suggesting that if AMD thought GPHI had waived any claims, "it should have said so and so informed the Federal Circuit") (Dkt. #697).

---

[5] The Federal Circuit did not remand claim 1 because the appellate court affirmed this Court's judgment of noninfringement for claims 1, 9-12, and 15-16, which expressly recite "scan conversion."  Dkt. #683-1 at 18, 34.

Waiver also does not require a party to state affirmatively that it no longer intends to pursue parts of its case.  Instead, silence (or inaction) can lead to waiver: any issue within the appealed judgment that "is *not* raised" is necessarily waived.  *Engel Indus.*, 166 F.3d at 1383.  GPHI has made this waiver argument previously—in a different context—with respect to AMD's invalidity counterclaims, *see* Red Brief, Beasley Decl. Ex. 2, at 54 ("ATI's failure to pursue all of its invalidity claims constituted an abandonment or waiver.") (Dkt. #701-2), and this Court and the Federal Circuit agreed.  On appeal, GPHI chose to limit its presentation of its argument to claims 1-6, and it must live with that limitation now. [6]

### F.   Whereas This Court, Before the Appeal, Had Discretion to Exercise Jurisdiction Over AMD's Invalidity Counterclaims, It Has No Discretion to Hear GPHI's Infringement Claims for '327 Claims 17-18 and 21-23 Under the Appellate Mandate.

After this Court entered summary judgment and GPHI withdrew its remaining infringement case, this Court had discretion to exercise jurisdiction over AMD's invalidity counterclaims and go to trial.  Order Denying Amendment of Judgment at 8-9 (citing *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1348 (Fed. Cir. 2004); *Nystrom v. TREX Co., Inc.*, 339 F.3d 1347, 1351 (Fed. Cir. 2003), *appeal reinstated*, 83 Fed. Appx. 321 (Fed. Cir. 2003), *opinion after reinstatement of appeal*, 374 F.3d 1105 (Fed. Cir.

---

[6] GPHI's mention of method claims in its appellate reply brief came too late.  The waiver standard requires identification of all appealed issues in the appellant's opening brief. *Engel Indus.*, 166 F.3d at 1383.  Statements in GPHI's reply brief therefore cannot be considered in determining whether GPHI waived its appeal with respect to claims 17-18 and 21-23.  Where GPHI discussed method claims in its appellate reply brief, it identified example method steps of "scan converting" and "blending"—steps found only in claims 9-16.  Krawczyk Ex. B at 27 (Dkt. #698).  GPHI never identified method steps from claims 17 or 18 in its appeal.  This explains the Federal Circuit's mention of claims 9-12 and 15-16 in its reasons for analyzing the Microsoft license only with respect to claims 2-6.  Dkt. #683-1 at 18.

2004)) (Dkt. #572).  In contrast, this Court does not have discretion to hear GPHI's infringement claims for '327 claims 17-18 and 21-23, which have been conclusively decided by the Federal Circuit's mandate.  *Engel Indus.*, 166 F.3d at 1384 (affirming the district court's lack of jurisdiction to consider an issue affirmed by the Federal Circuit).  GPHI's argument that AMD is in a "particularly unsympathetic position" with respect to these claims therefore is irrelevant and based on a false premise.

## II.     AMD's Invalidity Affirmative Defense Is Not Precluded by the Federal Circuit's Mandate or by this Court's Finding of Waiver.

Whereas a finding of noninfringement for '327 claims 17-18 and 21-23 was within the scope of this Court's judgment appealed by GPHI, the opposite is true for AMD's invalidity affirmative defense: it was moot and not within the Court's judgment.  Therefore, although GPHI cannot pursue infringement of claims 17-18 and 21-23 because the Federal Circuit did not remand those claims, AMD may pursue its invalidity affirmative defense because the Federal Circuit had no power to preclude it.

Four points justify a decision in AMD's favor regarding its invalidity affirmative defense:

> (1)     This Court had no jurisdiction to enter judgment dismissing AMD's invalidity affirmative defense.

> (2)     The Federal Circuit had no jurisdiction to enter judgment, expressly or implicitly, dismissing AMD's invalidity affirmative defense.

> (3)     Even with respect to AMD's invalidity counterclaims, neither Court entered a judgment on the *merits* of AMD's anticipation, obviousness, lack of enablement, or other invalidity contentions for '327 claims 2-6—the only issue decided was that AMD's conduct constituted waiver of invalidity counterclaims.

(4)     The Federal Circuit's constructions of "a rasterization process which operates on a floating point format" and "s10e5" changed the scope of '327 claims 2-6.[7]

For these reasons, no judgment has dismissed AMD's invalidity affirmative defense, and law of the case does not preclude the defense because no Court has reached the merits, and the controlling law—the construction of the claim terms—has changed.

**A.     Law of the Case Does Not Preclude AMD's Invalidity Affirmative Defense.**

AMD is entitled to challenge the validity of '327 claims 2-6 as an affirmative defense to infringement.  It also was entitled to request independent, broader relief in the form of an invalidity counterclaim.  Only the latter—AMD's counterclaim—has been addressed by this Court or the Federal Circuit, and it has been addressed only in the context of waiver, not on its merits.  GPHI refers generally to AMD's invalidity "contentions" in an attempt to suggest that AMD waived both its counterclaims and affirmative defense.  GPHI's Threshold Brief at 14, 15 (Dkt. #697).  This characterization is improper: counterclaims and affirmative defenses have separate jurisdictional requirements which must be considered in determining the scope of the waiver found by the Court.

At the time the parties submitted their appeals to the Federal Circuit, AMD's affirmative defense of invalidity was moot; GPHI does not argue otherwise.  GPHI's Threshold Brief at 18 n.10 (claiming AMD's jurisdictional argument is "futile" based on preclusion and judicial economy, but not asserting that it is incorrect) (Dkt. #697).  Therefore, this Court could not, and did not, enter judgment on the defense in GPHI's

---

[7] These points apply equally to claim 7, although GPHI should not be allowed to assert it in this remand.  Also, the Court found that AMD waived its invalidity counterclaim for claim 21, and did not reach the merits of AMD's invalidity theories.  AMD has focused here on claims 2-6 because those are the only claims for which GPHI may pursue its infringement case.

favor.  Questions regarding whether AMD could pursue its affirmative defense, and the merits of that defense, were not ripe for appeal.  *Laitram*, 115 F.3d at 952.  The Federal Circuit could not issue a judgment on the affirmative defense.  GPHI therefore is wrong that the Federal Circuit's opinion precludes AMD's invalidity affirmative defense on remand.

Law of the case is the only preclusion doctrine raised in GPHI's brief that can possibly be relevant to this case.  GPHI also cites cases—*Marchon Eyewear* and *Roche Palo Alto*—that describe claim preclusion and issue preclusion, but those doctrines cannot apply because they "concern the effect of one suit on a later suit and have nothing to do with how issues are resolved in a single case."  *Robinson v. City of Harvey*, 617 F.3d 915, 916-17 (7th Cir. 2010); *see Marchon Eyewear, Inc. v. Rothandberg, Inc.*, 98 CV 1932, 1999 U.S. Dist. LEXIS 22993, at *5-10 (E.D.N.Y. Mar. 28, 1999) (discussing claim preclusion and issue preclusion, and not discussing law of the case); *Roche Palo Alto LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 994-95 (N.D. Cal. 2007) (discussing issue preclusion, and not discussing law of the case).  *Arizona v. California* does not apply claim preclusion, issue preclusion, *or* law of the case, and instead discusses the proper interpretation of the Supreme Court's own decree preserving its jurisdiction to modify the decree in certain circumstances.  460 U.S. 605, 617-19 (1983).  These cases are inapplicable to the current issue.[8]

> 1.   The Federal Circuit Did Not Decide that AMD May Not Pursue Its Invalidity Affirmative Defense on Remand.

The Federal Circuit could not have "considered the precise dispute now before this Court," as GPHI asserts (Dkt. #697 at 18), because this Court's judgment, appealed by

---

[8] *Tenneco Inc. v. Saxony Bar & Tube, Inc.* does not relate to *any* preclusion doctrine, and instead discusses whether an entity named as a defendant may intervene in its own case. 776 F.2d 1375, 1379-80 (7th Cir. 1985).

AMD, did not and could not include a ruling on the affirmative defense, which was moot. Judgment at 2 (referencing only "counterclaims of invalidity," and not referencing any AMD affirmative defense) (Dkt. #573).  As already explained, an appellate mandate bars issues decided by the appellate court expressly, by silence regarding issues within the scope of the judgment on appeal, or by necessary implication.  *Engel Indus.*, 166 F.3d at 1382-83.  None of these apply here.  The Federal Circuit's statement that AMD "has not established that it deserves a second bite at invalidity on remand" relates only to AMD's invalidity counterclaims because the Federal Circuit had no power to preclude AMD's invalidity affirmative defense.[9]  *See Laitram*, 115 F.3d at 951-52 (explaining that mooted issues, not within the appealed judgment, could not be precluded on remand).

In addition, the Federal Circuit's denial of AMD's petition for panel rehearing and rehearing *en banc* carries *no* inferential weight.  GPHI's arguments to the contrary are incorrect.  *Exxon* contradicts GPHI's analysis, rejecting an argument that an earlier panel decision foreclosed an issue because the panel had denied a rehearing request for clarification that the decision did not foreclose that issue.  *Exxon* explained: "[c]ourts normally do not respond to petitions for rehearing and it would be a mistake to conclude that a court's non-response to an argument made in a rehearing petition necessarily means that the court has rejected that argument on the merits."  *Exxon*, 137 F.3d at 1479.

Here, AMD's petition requested two forms of relief: (1) reconsideration of the Federal Circuit's affirmance of this Court's finding of waiver for AMD's invalidity counterclaim; and (2) *clarification* that the Federal Circuit's judgment did not preclude

---

[9] Every other mention of AMD's "invalidity" case in section V of the Federal Circuit's opinion regarding waiver explicitly states "invalidity counterclaims" or "counterclaims of invalidity."  Dkt. #683-1 at 30-33.  The discussion never suggests that it is addressing and evaluating AMD's invalidity affirmative defense.

AMD's invalidity affirmative defense on remand.  Beasley Supp. Decl. Ex. 21.[10]  Only the request for clarification is at issue now.  *Exxon* itself dealt expressly with a request for clarification and rejected reliance on the denial of that request, explaining that inferences drawn from requests for clarification are "particularly suspect," and that "[t]he court's failure to grant a request for clarification could well reflect the view that clarification was not required, rather than an intention to reject on the merits the legal argument on which Exxon sought clarification."  *Exxon*, 137 F.3d at 1479.  Here too it is equally plausible that the Federal Circuit *agreed* with AMD's argument that the panel did not preclude an invalidity affirmative defense, making any clarification unnecessary.

> ### 2.   The Finding of Waiver of AMD's Invalidity Counterclaims Does Not Preclude AMD's Invalidity Affirmative Defense.

A finding of waiver of invalidity counterclaims cannot extend to waiver of an invalidity affirmative defense under law of the case.  The Court's counterclaim waiver finding was based on AMD's conduct at trial—specifically, its inaction on, among others, '327 claims 2-6, after infringement had been resolved in AMD's favor.  But an essential fact for the Court's finding of waiver of counterclaims is wholly missing with regard to AMD's affirmative defense: at the time of the counterclaim waiver (by inaction), the counterclaims were *available to AMD to pursue*, whereas at that time AMD had no affirmative defense available.  The counterclaim, therefore, could be waived by inaction; the affirmative defense could not.

Law of the case also is inapplicable because AMD's invalidity counterclaims were not decided on their *merits*.  *United States v. Hatter*, 532 U.S. 557, 566 (2001) ("The law of the case doctrine presumes a hearing on the merits."); *see also Scaife v. Racine County*, 238 F.3d 906, 907 (7th Cir. 2001) (explaining that a waiver finding would be "without

---

[10] This citation refers to the Supplemental Declaration of Anthony G. Beasley, submitted with this brief.

consideration of the merits"). Putting aside the invalidity issues regarding claims 17-18 and 22-23, the only invalidity-related issue decided in this case is whether AMD's conduct at trial constituted waiver of AMD's invalidity counterclaims. No court has rendered a judgment on the merits of the substance of AMD's invalidity counterclaims, including anticipation, obviousness, and failure to comply with 35 U.S.C. § 112 for '327 claims 2-6. Law of the case therefore does not preclude AMD's invalidity affirmative defense at trial.

GPHI's cited cases illustrate the necessity of a decision on the merits for any kind of preclusion to apply. The *Monsanto* case, which GPHI argues "is particularly instructive," analyzes the preclusive effect of a finding of inequitable conduct after a bench trial on the substantive merits and affirmance by the Federal Circuit. *Monsanto Co. v. Bayer Bioscience N.V.*, No. 2007-1299, 275 Fed. Appx. 992, 993-94 (Fed. Cir. Apr. 23, 2008). In a subsequent appeal, the Federal Circuit applied law of the case to preclude the plaintiff from challenging the district court's exceptional-case determination on the basis that the inequitable conduct finding was substantively wrong. *Id.* at 994 (applying law of the case where "in the disposition of that [prior] appeal this court explicitly affirmed the district court's findings that there was inequitable conduct"). *Monsanto* does not apply to this case where the only finding was one of waiver.[11]

_____

[11] Likewise, the other cases cited by GPHI, including *Dethmers Manufacturing Co.* and *Intergraph*, also relate to decisions made on the merits of an issue. *See Dethmers Mfg. Co., Inc. v. Automatic Equip. Mfg. Co.*, 299 F. Supp. 2d 903, 914 (N.D. Iowa 2004) ("First, there is no doubt that *this* court actually, and expressly, decided the question of whether or not the 'recapture rule' was applicable to the Re482 patent, and concluded that the rule was *not* applicable." (emphasis in original)); *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 697 (Fed. Cir. 2001) ("*Intergraph I* held that Intergraph had not established grounds on which to litigate whether Intel was a 'monopolist' . . . .").

GPHI's argument that AMD's invalidity affirmative defense is based on the same law and facts as its invalidity counterclaims would be insufficient even if it were correct, because the Court did not rule on the merits of the invalidity counterclaims for '327 claims 2-6, but it is also wrong.  The law has changed since the time when the Court found AMD waived its counterclaims: this Court modified its constructions of "rasterization," "rasterization circuit," and "frame buffer" after trial, and the Federal Circuit modified this Court's constructions of "a rasterization process which operates on a floating point format" and "s10e5."  As discussed in AMD's opening brief regarding threshold issues at pages 40-42, the Federal Circuit has explained that changing claim constructions "change[s] the rules of the game."  *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1356-57 (Fed. Cir. 1998).  AMD's invalidity affirmative defense therefore is based on different law under which AMD has never had the opportunity to present either invalidity counterclaims or an invalidity affirmative defense.[12]

### B. The Court Should Not Dismiss AMD's Affirmative Defense Based on Judicial Economy.

A trial on AMD's invalidity affirmative defense for '327 claims 2-6 will not be duplicative: no trial was held on those claims.  GPHI's arguments that the first trial will be rendered an "academic exercise" therefore are wrong.  Claims 2-6 have dramatically different elements, and therefore different scope, from claims 17, 18, 22, and 23.

---

[12] With respect to claims 17-18 and 22-23, which were heard by the jury, GPHI has suggested that the Federal Circuit reversed this Court's construction of "rasterization," which this Court found required floating point "scan conversion."  *See* GPHI's Reply Brief in Support of Its Motion to Strike at 3-4 (Dkt. #710).  AMD disagrees, but if the construction of "rasterization" changes, then the construction of "frame buffer" ("the portion of computer memory for storing color values during or after rasterization") in claims 17-18 and 21-23 also must change, and law of the case should not preclude AMD's affirmative defense of invalidity for those claims.

Judicial economy should not provide an independent basis to dismiss a proper affirmative defense over which the Court has jurisdiction and which is not precluded by a prior decision.  If anything, as discussed in AMD's opening brief, judicial economy supports trial of AMD's affirmative defense now, because if the Federal Circuit were to agree in the future that AMD's affirmative defense is available, no remand for a retrial will be necessary.  AMD's Threshold Brief at 43-44 (Dkt. #699).

## III.   GPHI's Attempted Expert Substitution Is Not "Substantially Justified" and Is Not "Harmless" Because It Allows for All New and Different Opinions.

GPHI seeks to use remand as a mechanism to increase its potential damages award by retaining a new expert to ask for a higher royalty rate.  It has not forthrightly offered a justification for doing so, instead arguing more broadly against *any* conditions being placed upon a new report while giving vague assurances that "no new damages theory" will be offered.  GPHI's request to substitute its damages expert should be denied.

AMD agrees that *Morel v. Daimler-Chrysler Corp.*, cited by GPHI, is instructive on the standard that should be applied to substitution of expert witnesses.  259 F.R.D. 17 (D.P.R. 2009).  The case does not, however, support GPHI's request to replace its damages expert.  In *Morel*, the District of Puerto Rico would not exclude testimony from a substitute expert "because a critical expert witness *died* after the deadlines for discovery had passed."  *Id*. at 20 (emphasis added).  *Morel* found that an expert's death constitutes "substantial justification" for substituting an expert: "[d]eath of an expert witness falls squarely within the category of circumstances that require a late disclosure."  *Id*.

To AMD's knowledge, GPHI's damages expert, Mr. Musika, is alive and well.  In fact, according to GPHI, he is scheduled to testify at a trial in May.  GPHI's Threshold Brief at 19 n.14 (Dkt. #697).  Unlike the defendant in *Morel*, who "had no control over the unforeseeable illness and death of [its expert]," 259 F.R.D. at 21, GPHI made its own decision to discontinue its relationship with Invotex.  *Morel*'s application of the substantial justification standard therefore does not apply here.

- 18 -

*Morel* further found that substitution was harmless, but that ruling also is distinguishable. *Id. Morel* found harmlessness where "[d]efendant has made clear that [its new expert] will testify on the same topics as [its deceased expert]," and "[d]efendant and plaintiffs are in agreement that no new subject matter will be addressed." *Id.* Here, in contrast, GPHI has not made a similar concession, and instead suggests that "[i]t is expected that other events have occurred that will affect the damages calculation, consistent with the law regarding damages." GPHI's Threshold Brief at 21 (Dkt. #697). This vague description places no bounds on the topics and subject matter that GPHI's new expert may cover in his report.

Specifically, GPHI has been careful to avoid stating that its new expert will not conclude that GPHI is entitled to a new, higher royalty rate. GPHI's opening threshold brief vaguely states, for example, "[b]oth experts would employ the analytical framework established and presented by Mr. Musika," and "there is no new damages theory and the data will be the same for each." Dkt. #697 at 21. These statements are almost meaningless. Employing the same "analytical framework" could mean employing a *Georgia-Pacific* analysis. "[N]o new damages theory" could mean that its new expert will perform a reasonable royalty analysis and will not opine on a lost profits theory. GPHI's assertion that "no new theories will be advanced" does not render its substitution harmless because it allows for new *opinions* and *conclusions*. Substituting a new expert also would prejudice AMD by giving GPHI the opportunity essentially to rebut AMD's damages expert report—submitted timely in 2007—on an issue for which GPHI bears the burden of proof. Allowing GPHI to change its expert in order to rework its potential recovery is not harmless and would be entirely unfair to AMD.

GPHI has not articulated any reason apart from mere inconvenience that Mr. Musika would be incapable of testifying at trial. It suggests three bases to justify its proposed substitution: (1) scheduling conflicts; (2) an ethical "concern" (but not a

- 19 -

conflict); and (3) management discontent.[13]  GPHI's Threshold Brief at 19-22.  All are without merit.

With respect to Mr. Musika's scheduling conflict, GPHI does not suggest that it is incapable of communicating with Mr. Musika and working out a schedule whereby he can supplement his expert report to address additional sales by AMD and testify at trial. In addition, the Court has ordered that trial will be bifurcated, Dkt. #694 at 4, so there may be some flexibility in scheduling damages testimony.  Mr. Musika's scheduling issue does not justify substituting a new expert.

GPHI's ethical "concern" and its alleged change in management are entirely irrelevant.  GPHI concedes that no ethical conflict exists, Dkt. #697 at 19 n.14, 22 ("SGI has never contended this is a formal conflict, but only a concern to SGI's current managers"), so this cannot provide substantial justification.  GPHI does not explain how its management has changed, but in any event, a change in management cannot provide the basis for replacing its expert: if management changes justified substituting experts, then experts potentially could be replaced at any time during litigation.  GPHI's alleged justifications merely attempt to conceal the fact that GPHI wants to replace its expert in order to increase its potential recovery.

*Morel* recognized that substitution of the deceased expert did, in fact, constitute a "discovery violation," but concluded that the "violation was an isolated incident that could not have been prevented by the defendant."  259 F.R.D. at 23.  In contrast, GPHI's proposed discovery violation has no justification and is not harmless because it will allow GPHI to redo its damages analysis late in the case—on remand—requiring AMD to

_____

[13] AMD here addresses GPHI's asserted reasons for substituting a new expert for Mr. Musika, GPHI's disclosed testifying damages expert.  Ms. Vanderhart is not a testifying expert, and has not submitted a report—her departure from Invotex cannot justify substituting a new testifying expert for Mr. Musika.

respond to entirely new opinions and nullifying the substantial damages work already performed by AMD and its expert.  Replacement of GPHI's damages expert should not be allowed.

## IV.   It Would Be Unfair to Allow GPHI to Accuse AMD's R7xx Products in This Case.

GPHI's cited "evidence" demonstrates that AMD's R7xx products are not "nearly identical" to the R6xx series as GPHI has represented, but instead constitute an entirely separate series of products with different structural and functional characteristics.  GPHI should not be allowed to use the procedural restrictions of this remand to its advantage to proceed quickly to a trial on new products that are not accused.

The Court has restricted the proceedings on remand in order to proceed to trial as quickly as possible.  Specifically, the Court has ruled that the parties may not bring any dispositive motions under Fed. R. Civ. P. 56.  Order Granting Motion to Strike (Dkt. #711).  GPHI also argued that AMD may not request that the Court enter judgment under Rule 56.  *See* GPHI's Br. in Supp. of Mot. to Strike (Dkt. #706); GPHI's Reply Br. in Supp. of Mot. to Strike (Dkt. #710).  Allowing new accused products does not comport with these restrictions.

If AMD cannot test GPHI's evidence and present judicial estoppel arguments through Rule 56, GPHI should not be allowed to accuse new products.  GPHI should not be allowed to go directly to the jury with its R7xx accusations without the Court evaluating whether there is any genuine issue of any material fact regarding infringement. *See Jones v. Young*, No. 3:04CV00257 JLH, 2007 U.S. Dist. LEXIS 67554, at *21-23 (E.D. Ark. Sept. 10, 2007) (refusing to allow amendment to complaint when the summary judgment deadline had passed, explaining "[i]f the amendment adding these new claims were permitted, the defendants would be deprived of any opportunity to challenge the new claims in a Rule 56 motion").  To allow GPHI to accuse R7xx products "would deprive the defendants of significant rights protected by the Federal Rules of Civil

- 21 -

Procedure." *Id.* at \*22-23; *see also* Fed. R. Civ. P. 1 (explaining that the Rules "should be construed and administered to secure the *just*, speedy, and *inexpensive* determination of every action and proceeding" (emphasis added)).  It would violate fundamental fairness to deny a party a procedural right on newly accused products.  The proceedings on remand should be limited for all issues, including both procedural limitations on dispositive motions and limitations on products that may be accused.

Allowing R7xx products into this case also does not further judicial economy: in its threshold brief, GPHI has threatened to file another lawsuit against AMD on products other than R7xx, making clear that litigation between the parties will not end with this case, whether or not R7xx products are included.  Dkt. #697 at 26.  If GPHI intends to pull AMD into additional litigation, with a full discovery period, then it is not efficient or fair to bring the R7xx series into this case which has been to the Federal Circuit and remanded, with a limited discovery period, and no summary judgment motions.[14] Bringing the R7xx series into this remand simply allows GPHI to avoid the summary judgment procedures set forth in the Federal Rules on new products, which it could not avoid in a subsequent case.  This result is unfair to AMD and should not be allowed, especially where GPHI has not demonstrated a basis to suggest that the R7xx products satisfy any claim of the '327 patent.

_____

[14] GPHI is attempting to take significant discovery on remand, not "limited discovery to complete trial preparation" or "incremental discovery" as it represented in the Joint Preliminary Pretrial Conference Report.  Dkt. #693 at 4, 7.  For example, GPHI has sent AMD subpoenas to be served on third parties Toshiba, Apple, and Acer, which each request information dating back to 2003—discovery that could have been taken in the prior proceedings.  GPHI also has filed new lawsuits against these entities, asserting the '327 patent.  Like these subpoenas, discovery on AMD's R7xx products cannot be characterized as "incremental discovery" appropriate for this limited remand.

GPHI has not provided any evidence that R7xx products satisfy any '327 claims. Instead it has relied on conclusory generalizations that R7xx products are "nearly identical" to R6xx products.  GPHI's Threshold Brief at 23-26 (Dkt. #697).  But although there may be similarities, even GPHI's cited documents demonstrate that R7xx products have different features than R6xx products, and the differences will require substantial new discovery and expert analysis, which is inappropriate for this remanded case.

GPHI's documents in fact show that R7xx products have significant differences from R6xx products.  The "Radeon R6xx/R7xx Acceleration" document discusses R6xx and R7xx as separate series, specifically identifying "Changes from R670 to R7xx." Krawczyk Ex. H at 6 (Dkt. #698-8).  Those changes include "[n]ew shader instructions" and "[r]emoved fixed-function fog," *id.*, which have significant relevance to the '327 claims, including at least the limitations "frame buffer," "rasterization circuit," and "fog circuit."  One issue that must be decided with respect to infringement for the currently accused products is whether they contain "hardware" for performing the claimed graphics operations.  This document shows that the R7xx is different from R6xx products with respect to this issue: it can execute new "instructions"—that is, new, additional software. *Id.*  The R7xx removal of "fixed-function fog," *id.*, also affects this analysis for at least claim 4, which recites a "fog circuit."  GPHI's infringement case therefore will have to change for the R7xx and different factual issues will need to be presented to the jury. GPHI's cited document therefore does not support its contention that the R7xx series is "nearly identical" to the R6xx series; instead, it identifies critical differences.

GPHI's cited "evidence" also does not support its claims that R7xx products are part of the same "generation" as R6xx products.[15]  The Wikipedia article cited by GPHI

---

[15] In addition, the documents cited by GPHI provide no basis to suggest that products within each "generation"—the label selected by GPHI—contain the same structures or perform the same graphics operations.

identifies "R600" and "R700" as separate "generations."  Krawczyk Ex. G at 2 (Dkt. #698-7).  For example, it explains that the R600 GPU correlates to the "HD2000-HD3000" retail names, and that the R700 GPU correlates to the "HD4000" retail name. *Id.*  Then, it explains "ATI names each card by generation . . . [t]he first number is the generation number, for example, 5000 . . . ."  *Id.*  That is, even according to the Wikipedia article, the R7xx products, with brand names starting with "HD4000," are in a *separate* generation from the R6xx products, with brand names starting with "HD2000" and "HD3000."  Even this unauthenticated, hearsay article does not support the factual conclusions GPHI draws.

In sum, GPHI's threshold brief demonstrates that it intends to continue to litigate against AMD.  It has not established that the R7xx products are sufficiently similar to the R6xx products with respect to the '327 claims such that it should be allowed to take discovery on the R7xx products and accuse them in this case.  In another case, there will be a full discovery period and full summary judgment procedures.  There is no reason to burden AMD and this Court with a full case on new products under a compressed schedule, without summary judgment, intended to evaluate the limited issues remanded by the Federal Circuit on existing accused products.

## V.   <u>This Court Dismissed Claim 7 from the Case; There Is No Justification to Reevaluate that Decision Now.</u>

In its summary judgment Order, the Court dismissed claim 7 from the case, finding that GPHI had asserted it too late.  Dkt. #505 at 51.  GPHI did not appeal this dismissal, and the Federal Circuit remanded for this Court to consider '327 claims 2-6. The mandate rule therefore precludes further consideration of '327 claim 7.  GPHI previously argued, with respect to AMD's invalidity counterclaims, that "defendants cannot pursue some claims <u>and</u> hold other asserted claims in reserve."  Red Brief, Beasley Decl. Ex. 2, at 49 (emphasis in original) (Dkt. #701-2).  The same principle must hold for claim 7, dismissed before appeal.  If GPHI thought the Court's dismissal of

claim 7 was improper, it should have raised it with the Federal Circuit, and not remained silent with the hope of asserting it in this Court on remand.

Further, if the Court allows GPHI to assert claim 7 now, AMD will never have had the chance to challenge that assertion through a summary judgment proceeding. As discussed above with respect to the R7xx series of products, it would be unfair to allow GPHI to go straight to trial on '327 claim 7. If GPHI can assert claim 7 now, it will have avoided summary judgment by asserting claim 7 too late for it to be included in the prior proceedings. This result should not be allowed. *See Jones*, 2007 U.S. Dist. LEXIS 67554, at \*21-23. Because the Court has restricted the procedures available to the parties on remand, it also should restrict the substance that may be addressed.

## <u>CONCLUSION</u>

For the foregoing reasons, AMD requests that the Court enter an Order on the issues raised in GPHI's threshold brief in accordance with the following:

(1) GPHI may assert only claims 2-6 of the '327 patent against AMD in the remaining proceedings. GPHI may not assert claims 7, 17, 18, 21, 22, or 23 of the '327 patent against AMD.

(2) AMD may pursue its affirmative defense of invalidity, including theories under 35 U.S.C. §§ 102, 103, and 112, of the remaining asserted claims of the '327 patent.

(3) GPHI may not assert the '327 patent against AMD's R7xx series of products in this case.

(4) GPHI may not take discovery of any kind regarding products within AMD's R7xx series.

(5) GPHI may not offer at trial expert testimony relating to damages from any expert other than Terry L. Musika.

- 25 -

DATED:  December 15, 2010

By:

William H. Manning (pro hac vice)
Aaron R. Fahrenkrog (pro hac vice)
Jacob S. Zimmerman (pro hac vice)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Phone: (612) 349-8500
Facsimile: (612) 339-4181
Email:  WHManning@rkmc.com
          ARFahrenkrog@rkmc.com
          JSZimmerman@rkmc.com

James D. Peterson
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Post Office Box 2719
Madison, WI 53701-2719
Phone: (608) 257-3911
Facsimile: (608) 257-0609
Email:  JPeterson@gklaw.com

ATTORNEYS FOR DEFENDANTS
ATI TECHNOLOGIES, INC.,
ATI TECHNOLOGIES ULC, AND
ADVANCED MICRO DEVICES, INC.

- 26 -